UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **KORY WATKINS,** | § | |
| individually and in his capacity as coordinator for | § | |
| **OPEN CARRY TARRANT COUNTY,** | § | |
| Plaintiffs, | § | **Case: 4:14-cv-381** |
| | § | |
| **v.** | § | |
| | § | |
| **CITY OF ARLINGTON** | § | |

<u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' COMBINED APPLICATION FOR
PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER</u>

Plaintiffs challenge the City of Arlington's "Streets and Sidewalks" Chapter of the Code

of Arlington, Section 15.02 both facially and as applied to Kory Watkins and the members of

Open Carry Tarrant County's freedom of speech, as the law chills Plaintiffs' political speech and

effectively bars it. Because the policy acts to violate fundamental rights operating at the core of

the First and Fourteenth Amendments to the United States Constitution, Plaintiffs seek

immediate relief in the form of a preliminary injunction.

## I.    STATEMENT OF FACTS

1. Plaintiff Kory Watkins is the county coordinator for Plaintiff Open Carry Tarrant County,

   an organization dedicated to the education of Texans regarding gun rights. (Affidavit of

   Kory Watkins, attached to the Motion for Preliminary Injunction as Exhibit A "Aff." ¶2.)

2. Among the proper and legal activities of this organization is the presentation of speeches

   on political topics, the organization of rallies and other gatherings to hear these speeches,

   and dissemination of materials supporting gun rights. (Aff. ¶3.)

3. One of the common activities of Open Carry are group "walks" in which participants

   walk on sidewalks and providing pocket-sized copies of the United States Constitution to

those individuals who indicate that they would like one, including those who are passengers of cars that are stopped temporarily at a stop light.  (Aff. ¶4.)

4.  No one has been hurt, or damaged in any way during any Open Carry event. (Aff. ¶17.)

5.  Plaintiff has sought information regarding accidents and political rallies in Arlington and found literally no other accident or safety issue associated with pedestrians involved in such political or charitable organization participating in such events since at least as far back as 1997, when a single Shriner was hurt while soliciting donations. Aside from that event, no one has been hurt in recorded history during any similar exercise by any type of political group or organization, or any non-political event, such as the many car washes, fire-fighting fund-raising events, or "send my band member on a field trip" fund-raising efforts that are ongoing year-round in Arlington. (Aff. ¶5-7.)

6.  Two Open Carry participants were cited in late March for violating the Streets and Sidewalks Chapter of the City of Arlington, when they provided United States Constitutions to individuals who requested them from their vehicle. The vehicles were stopped at a stop light, no one was hurt, and no one could colorably claim that any dangerous activity was occurring or public safety was threatened. (Aff. ¶8.)

7.  After the two Open Carry participants were cited, the charges were later dropped as the Arlington City Council amended the "Streets and Sidewalks" Chapter of the Code of Arlington, Section 15.02, making the ordinance more strict and raised the potential fine to $500 per occurrence, targeted the specific actions by Open Carry, and restricted the areas in which anyone could pass out copies of the United States Constitution. (Aff. ¶9.)

8.  In addition, police officers threatened to jail event participants for these alleged violations, further chilling political speech by threatening jail for a misdemeanor offense. (Aff. ¶12-14.)

9.  Statements made by the Council City members at various points near the passage of the ordinance on May 13, 2014 indicate that this ordinance was deliberately intended to preclude and make illegal our walks, which occur on public sidewalks and typically near streets. (Aff. ¶11.)

10. No event precipitated this sudden interest in these restrictions other than the Open Carry events and public demonstrations, irrespective of the fact that the Shriners and firefighters have been standing directly in the busiest streets with the blessing of the City Council for decades. (Aff. ¶5-7,17.)

11. Plaintiff Watkins was told that he would be arrested by a police officer even under the unamended law for handing out Constitutions as he prepared one to the passenger of a car who had requested one, while the car was stopped and without entering the street. Violation of the ordinance is merely a misdemeanor, not subject to punishment by jail. (Aff. ¶12.)

12. The new law will begin to be enforced on Thursday, May 29, 2014. Open Carry Tarrant County's members plan regular walks throughout the week, and fear that they will be cited and arrested for these activities between the 29th and any hearing on a temporary injunction, because they have been told by police and city council that the new and more stringent law will be enforced. Moreover, because Open Carry has eager volunteers who demonstrate at times outside of planned times and places, so even if Open Carry officially moves its walks outside Arlington until after an injunction hearing, there is a

high probability that Open Carry members will continue to pass out United States Constitutions to those who request them while demonstrating in Arlington.

13. Further, some Open Carry members reasonably fear citation and arrest because they have been told that they will be cited and arrested for these activities by police and city council members. This has caused a chilling effect on members of Open Carry's willingness to participate as they had in the past, as no one wants to be harassed and threatened with time in jail for doing nothing more than handing out the United States Constitution to those who have stated that they wish to receive it. (Aff. 13-14.)

14. The City will suffer no hardship by being enjoined from enforcement of the new law. (Aff. ¶17.)

15. Though council members couch supportive language for this amended ordinance as though it is about safety, they had no such concerns for the decades that they have been involved in public "service", until Open Carry became political activity, and no accident at all has occurred, or even near accidents or complaints, in connection with their political speech and demonstrations.

## II.    PLAINTIFFS WILL PREVAIL ON THEIR CLAIM

16. A three-part framework is employed for analyzing the constitutionality of restrictions on expression. The first step is to determine if the speech is protected by the First Amendment, the second is to identify the nature of the forum where the speech is to take place, and the third is to assess whether the speech restrictions are justified under the requisite standard. *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788,797 (1985).

a.   First Amendment Protection – It is axiomatic that political speech is protected by the First Amendment; and that leafleting is protected First Amendment expression. *See McIntyre v. Ohio Elections Commission*, 514 U.S., 115 S. Ct. 1511 (1995) ("the speech in which Mrs. McIntyre engaged -- handing out leaflets in the advocacy of a politically controversial viewpoint -- is the essence of First Amendment expression. . . . No form of speech is entitled to greater constitutional protection than Mrs. McIntyre's.")

b.   Nature of Forum - The extent that protected speech can be validly regulated depends in large part on the forum (property) used and its classification. *Frisby v. Shultz,* 487 U.S. 474, 479 (1988). The Supreme Court recognizes three types of forums: 1) traditional public forum, 2) designated public forum, and 3) nonpublic forum. *Cornelius*, 473 U.S. at 802. "Traditional public fora are those places which 'by long tradition or by government fiat have been devoted to assembly and debate." *Id*. "Public streets and parks fall into this category." *Id*., quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939).  The area in which Plaintiffs operate – the sidewalks of Arlington – is the quintessential public forum.

c.   Justification of Speech Restrictions - In a public forum (either traditional or designated), the government entity can only enforce a valid time, place or manner restriction. *Perry Educ. Ass 'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983). To survive scrutiny, the regulation must be narrowly tailored to serve a significant governmental interest and leave open ample alternative channels of communication. *Id.* Arlington's sidewalk ordinance is overly broad and does not pass constitutional muster, as follows:

i.  The law prohibits all interaction with those in vehicles, rather than restricting charitable solicitations. When an Open Carry participant leaves the sidewalk to go to a vehicle and give a passenger a copy of the Constitution, he is doing so by invitation. There is no danger of intimidating behavior or annoying drivers, or failure to see the participant. This separates Open Carry's behavior from solicitors who seek to receive funds from vehicle passengers.

ii.  The law prohibits interaction on nearly every arterial street in Arlington, eliminating from consideration every street that has any significant traffic, irrespective of whether a sidewalk exists near the street, or any other safety consideration. When dealing with the most traditional of traditional public fora, the City's ability to impose widespread absolute bans (disguised as "time, place, and manner restrictions) on expression is at its nadir.

iii.  The law is mere pretext. No accident has sparked the need for increased attention to safety. The City Council showed no interest and conducted no study to show the danger or the benefits of this new amendment. Only when Open Carry began their activity did the City Council swing into immediate action.

iv.  Defendant Arlington City Council is required by state law (Tex. Transp. Code § 552.0071) to allow state employees or agents of the local authority to solicit charitable donations if certain criteria are met, including insurance, date and times, and numbers are submitted. Fire fighters and

other city employees collect funds using this law. However, fire fighters work for the city by definition. If the city wanted to prevent the city's fire fighters from their solicitation activities, the council could easily do so. The fact that they do not prevent fire fighters from conducting solicitations from the middle of the street indicates that those affiliated with disfavored activities receive viewpoint discrimination. The Shriners have no such direct municipal connection, but their speech is equally favored over that of the Plaintiffs.

v.  Additional Considerations - Open Carry members wish to speak on certain sidewalks. Sidewalks and streets are "prototypical" examples of traditional public fora. *Schneck v.Pro-Choice Network,* 519 U.S. 357, 377 (1997). No "particularized inquiry" is required for such areas. *Frisby,* 487 U.S. at 481. As long noted, and often repeated, "*wherever* the titles of streets and parks *may rest* they have immemorially been held in trust for the use of the public, and time out of mind have been used for the purposes for assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. C/0,* 307 U.S. 496, 515 (1939) (emphasis added). Hence, "sidewalks, streets, parks generally are considered, *without more,* to be public forums." *United States v. Grace,* 461 U.S. 171, 177 (1983) (emphasis added). *See, e.g., Deegan v. City of Ithaca,* 444 F. 3d 135, 141-42 (2nd Cir. 2006) (held pedestrian mall to be a traditional public forum). The "more" that must be shown is incompatibility with expression. *See Lee,* 505 U.S. 697 (Kennedy, J. concurring) (emphasized

compatibility with speech as the determinative factor for assessing the existence of traditional public forum). Sidewalks and parks constitute traditional public fora unless it can be demonstrated that expression interferes with the intended use of the property. Typically, incompatibility cannot be shown, since expression is naturally congruent with sidewalks and parks.

### III.    OTHER IMPORTANT CASE LAW

17. ***Schneider v. State of New Jersey***, 308 U.S. 147 (1939), presented the question whether regulations embodied in municipal ordinances abridged the First Amendment rights of freedom of speech and of the press secured against state invasion by the Fourteenth Amendment of the Constitution. The appellants (Jehovah's Witnesses) were charged with a violation of a local ordinance that barred persons from distributing handbills on public streets or handing them out door-to-door. The U.S. Supreme Court held that the purpose of the ordinances to keep the streets clean and of good appearance was insufficient to justify prohibiting defendants from handing out literature to other persons willing to receive it. Any burden imposed upon the city authorities in cleaning and caring for the streets as an indirect consequence of such distribution resulted from the constitutional protection of the freedom of speech and press. Concerning the distribution of materials from house to house without a permit, the ordinance was void. However, municipalities may lawfully regulate the conduct of those using the streets, for the purpose of keeping them open and available for movement of people and property, so long as legislation to this end does not abridge the constitutional liberty of one rightfully upon the street to

impart information through speech or the distribution of literature. In the case at bar, no observer has even opined that the Open Carry events have impaired traffic in any way.

## IV.    OPEN CARRY IS SUFFERING IRREPARABLE HARM

18. Without the requested injunction, Watkins and Open Carry members are continually prevented from exercising their First Amendment rights. They wish to speak presently, but the fear of punishment is chilling their membership and others from doing so. Thus, the loss of their constitutional right to speak is both actual and imminent, and such loss of First Amendment freedoms results in irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373 (1976).

## V.    INJUNCTION WILL CAUSE NO HARM TO THE CITY OF ARLINGTON

19. Granting Plaintiff's request for injunctive relief - which essentially commands the City officials to comport with constitutional requirements- will cause no harm to it. As previously pointed out, Open Carry events have included no dangerous conditions or results. The City has no legitimate interest in enforcing an unconstitutional policy.

## VI.    PUBLIC INTEREST FAVORS THE PRELIMINARY INJUNCTION

20. In this matter, the public interest will be best served by the elimination, rather than the continuation, of Arlington's discrimination against Open Carry's. The public is best served by preserving the foundation of American democracy via informed public discourse.

## VII.    CONCLUSION

For reasons set forth herein, Plaintiffs respectfully requests that this Court grant their Motion for Preliminary Injunction.

Respectfully submitted,

Norred Law, PLLC

By: *[signature]*

| | |
|---|---|
| Warren Norred, Texas Bar 24045094 | Davis Miles McGuire Gardner, PLLC |
| wnorred@norredlaw.com | Joshua Carden, Texas Bar 24050379 |
| C. Chad Lampe, Texas Bar 24045042 | jcarden@davismiles.com |
| chad@norredlaw.com | 545 E John Carpenter Frwy, Suite 300 |
| 200 E. Abram St., Ste. 300; | Irving TX, 75062 |
| Arlington, TX 76010 | Phone: (972) 674-3885 |
| O 817-704-3984; F 817-524-6686 | Fax: (972) 674-2935 |
| Attorneys for Plaintiffs | Attorney for Plaintiffs |

**CERTIFICATE OF SERVICE** - I HEREBY CERTIFY that a copy of the foregoing memorandum has been delivered to Robert Fugate by facsimile 817-459-6897 on this 28thd day of May, 2014.

/s/ Warren V. Norred
Warren V. Norred