**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |  |
|---|---|---|
| **KORY WATKINS and OPEN CARRY TARRANT COUNTY,** | § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **Civil Action No. 4:14-cv-381-O** |
| **CITY OF ARLINGTON,** | § § | |
| **Defendant.** | § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiffs' Combined Application for Preliminary Injunction and Temporary Restraining Order and Memorandum in Support (ECF Nos. 5-6), filed May 28, 2014; Defendant's Response and Brief in Opposition (ECF No. 11), filed June 2, 2014; and Plaintiffs' Reply (ECF No. 13), filed June 5, 2014. Plaintiffs seek injunctive relief preventing the enforcement of the City of Arlington's ordinance prohibiting interactions between pedestrians and occupants of vehicles at particular intersections in Arlington, asserting the ordinance unconstitutionally prohibits Plaintiffs' free speech rights. Having reviewed the motion, the briefing, and the applicable law, the Court finds that Plaintiffs' motion should be and is hereby **GRANTED**.

**I.    BACKGROUND**

This case arises out of an ordinance adopted by the City of Arlington, Texas ("Arlington" or "the City") that prohibits interactions between pedestrians and occupants of vehicles at certain intersections in Arlington. In 1994, Arlington passed an ordinance in the "Streets and Sidewalks" Chapter of the Code of the City of Arlington that regulated interactions between pedestrians and

occupants of vehicles.  Section 15.02 of the ordinance provided:

> A.   A person commits an offense if he or she stands on or in any manner occupies a shoulder, improved shoulder, sidewalk, median or public right-of-way in the areas set out in Section 15.03 to solicit or attempt to solicit a ride, employment or business or charitable contributions from the occupants of any vehicle, other than a lawfully parked vehicle. . . .
>
> C.   No person shall stand or walk on or in any manner occupy a shoulder, improved shoulder, sidewalk, median or public right-of-way for the purpose of distributing literature or any other object to the occupant of a vehicle, other than a lawfully parked vehicle.

App. Supp. Def.'s Resp. Ex. 1 (Section 15.02), App. at 77, ECF No. 11-1.  Section 15.03 provided a list of specific intersections that were subject to the restrictions found in Section 15.02.  *See id.* (Section 15.03), App. at 78-85.

Plaintiff Kory Watkins ("Watkins") is the coordinator for Plaintiff Open Carry Tarrant County ("Open Carry").  *See* Compl. ¶ 10, ECF No. 1.  Watkins and Open Carry (collectively "Plaintiffs") seek to educate Texans regarding gun rights and organize and participate in group "walks" whereby participants walk on sidewalks and provide pocket-sized copies of the United States Constitution and gun rights literature to any individual that indicates that they would like one, including occupants of vehicles.  *Id.* ¶ 12; Hearing Tr. 3, 14, July 7, 2014.  In March 2014, while participating in a walk organized by Plaintiffs, two individuals were cited for violating Section 15.02 when they provided Constitutions to occupants of vehicles that were stopped at a red light in Arlington.  Compl. ¶ 16.

Plaintiffs threatened to sue Arlington over the citations, and Arlington responded by dropping the charges against the individuals and putting a moratorium on enforcement of the ordinance.  *See*

*id.* ¶ 17; Hearing Tr. at 34.  Prompted by the threat of a lawsuit, Arlington amended Section 15.02,

effective May 29, 2014, which now provides:

> A person commits an offense if he or she stands on or in any manner
> occupies a shoulder, improved shoulder, sidewalk, median or public
> right-of-way in the areas set out in Section 15.03 to solicit or attempt
> to solicit for purpose of an exchange with the occupants of a vehicle,
> sell or offer for sale any merchandise or service directly to the
> occupants of a vehicle, or distributes or attempts to distribute any
> object directly to the occupants of a vehicle, other than a lawfully
> parked vehicle.

App. Supp. Def.'s Resp. Ex. 3 (Am. Section 15.02), App. at 69, ECF No. 11-3; *see also* Hearing Tr.

at 35 (counsel for Arlington noted that amendment to Section 15.02 was "certainly prompted by the

threat of the lawsuit").  For the purposes of Section 15.02, "exchange" is "used in its broadest sense"

and includes "the giving of a ride, contribution, employment, or business."  App. Supp. Def.'s Resp.

Ex. 3 (Am. Section 15.01), App. at 68, ECF No. 11-3.

Section 15.03 sets out a list of areas in Arlington that are subject to Section 15.02.  Pursuant

to Section 15.03, no person shall engage in the acts set forth in Section 15.02: (1) at any time within

500 feet of the intersections listed in Section 15.03(A.); (2) at any time within 1000 feet from the

center point of the highway interchanges listed in Section 15.03(B.); (3) at any time at the

intersections listed in Section 15.03(C.); and (4) before, during, and after specific events, including

Texas Rangers and Dallas Cowboys games, at the intersections listed in Section 15.03(D.).  *See id.*

(Am. Section 15.03), App. at 70-76.

As a result of the amendment to Section 15.02 and Arlington's threatened enforcement of

amended Section 15.02, Plaintiffs filed the instant action asserting that Arlington's actions violated

Plaintiffs' right to free speech and expression as provided in the First and Fourteenth Amendments.

*See* Compl. ¶¶ 3, 28.  Plaintiffs have challenged Section 15.02 as facially unconstitutional and have

also brought an as-applied challenge to Section 15.02.  *See id.* ¶ 28.  Plaintiffs also filed the instant

application for injunctive relief seeking an order from the Court enjoining Arlington from enforcing

Section 15.02.  *See* Pls.' Appl., ECF No. 5.

Plaintiffs argue Arlington's "sudden interest" in interactions between pedestrians and

occupants of vehicles and the enforcement of Section 15.02 is an attempt to threaten and harass

Plaintiffs.  *See* Compl. ¶¶ 19, 22, 25; Hearing Tr. at 3.  Plaintiffs contend that prior to their events,

the City never enforced Section 15.02 and allowed other organizations to interact with vehicles.  *See*

Compl. ¶ 22 ("No event precipitated this sudden interest in these restrictions other than the Open

Carry events and public demonstrations . . . ."); Pls.' Mem. Supp. Ex. A (Watkins Aff.), App. at 2,

ECF No. 6-1 ("Prior to our political activity, there have been many organizations which have had

interaction with passing motorists . . . ."); Pls.' Reply Ex. A (Watkins Aff.), App. at 19, ECF No. 13

("Prior to our walks, I was unaware of any enforcement of any anti-solicitation laws in Arlington.

I have seen many bands, cheer squads, and athletic supports all over DFW, but I have never known

a police officer to cite any of those groups.").  Other than an accident in 1997 involving a Shriner,

Plaintiffs assert they have been unable to obtain any information regarding accidents and political

rallies in Arlington and argue that nobody has been injured "during any similar exercise by any type

of . . . group or organization . . . such as the many car washes, fire-fighting fund-raising events, or

'send my band member on a field trip' fund-raising efforts that are ongoing year-round in Arlington."

Compl. ¶ 15; *see also* Pls.' Mem. Supp. Ex. A (Watkins Aff.), App. at 2, ECF No. 6-1.

Arlington contends that Section 15.02 is about public safety, but Plaintiffs assert that

Arlington did not conduct any study to show that Plaintiffs' actions are dangerous and argue

Arlington is using Section 15.02 to "deliberately target[]" Plaintiffs.  *See* Compl. ¶¶ 20, 22, 27.

Although a violation of Section 15.02 is a misdemeanor, Plaintiffs allege that Arlington police

officers have threatened to jail participants for violations of Section 15.02.  Pls.' Mem. Supp. Ex.

A (Watkins Aff.), App. at 3, ECF No. 6-1; *see also* App. Supp. Defs.' Resp. Ex. 3 (Am. Section

16.01), App. at 78, ECF No. 11-3 ("Violation of any provision of this Chapter shall be considered

a misdemeanor punishable by a fine not to exceed . . . $500.00 . . . .").  Plaintiffs also argue that

statements made by members of the Arlington City Council indicate that Section 15.02 was

specifically aimed at preventing Plaintiffs from conducting their walks. *See* Compl. ¶ 20; Pls.' Reply

Ex. A (Watkins Aff.), App. at 16, 18, ECF No. 13.

Plaintiffs argue that Arlington's threatened enforcement of Section 15.02 "has caused a

chilling effect" on Plaintiffs' speech because "no one wants to be harassed and threatened with time

in jail for doing nothing more than handing out the United States Constitution to those who have

stated that they wish to receive it."  *See* Compl. ¶¶ 20, 25; *see also* Hearing Tr. at 5 ("[I]f we plan

to do a demonstration in Arlington, there are definitely some people who do not want to come

because they could be cited or arrested.").

On July 7, 2014, the Court held an evidentiary hearing on Plaintiffs' motion for injunctive

relief.  At the hearing, Watkins testified that Plaintiffs' "general practice[]" is to conduct walks and

hand out Constitutions and other literature concerning gun laws in Texas to people that want the

literature.  *See* Hearing Tr. at 3 ("It's . . . a mutual agreement between two citizens . . . .").  Watkins

stated that Plaintiffs provide information to "anybody who is wanting our information," including

occupants of vehicles, but claimed that Plaintiffs only interact with vehicles when they are parked

at a red light.  *See id.* at 14-15.

5

Watkins testified that in the past year he has personally been on over 200 walks and has organized and been a part of "[h]undreds and hundreds" of walks and, to his knowledge, nobody has ever been hurt or cited for impeding traffic. *See id.* at 3-4. He stated that the only time anyone has been cited for something were the two individuals cited for violations of the previous version of Section 15.02. *Id.* at 4. Watkins further testified that Plaintiffs conducted walks in multiple cities, which were "very okay" with what Plaintiffs are doing, but stated that Plaintiffs are being harassed and threatened by the Arlington police department and city council. *Id.* at 3; *see also* Pls.' Reply Ex. A (Watkins Aff.), App. at 12-13, ECF No. 13. Arlington did not call any witnesses at the hearing. Other than Watkins' testimony, neither side presented any other evidence and counsel for Arlington stated that the City was going to "stand on the ordinance." *See* Hearing Tr. at 15-16.

## II.     LEGAL STANDARD

To obtain a preliminary injunction, an applicant must show: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012) (citing *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)); *see also Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009).

A preliminary injunction is "an extraordinary remedy never awarded as of right," *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008), and the applicant bears "the burden of persuasion" on all four elements. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985); *see also Enter. Int'l, Inc. v. Corp. Estatal Petrolera Ecuatoriana*, 762 F.2d

464, 472 (5th Cir. 1985) (stating preliminary injunction may not issue if applicant fails to carry its

burden on any one of the four prerequisites) (citation omitted).  The preliminary injunction analysis

is no different in First Amendment cases, although the Fifth Circuit has found that the "loss of First

Amendment freedoms for even minimal periods of constitutes irreparable injury justifying the grant

of a preliminary injunction."  *See Palmer*, 579 F.3d at 506 (citing *Elrod v. Burns*, 427 U.S. 347, 373

(1976); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)); *see also*

*Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (noting other

requirements for obtaining injunction are "generally deemed to have been satisfied" when plaintiff

shows likely violation of First Amendment rights) (citation omitted).

## III.    ANALYSIS

### A.    Likelihood of Success on the Merits

To determine the constitutionality of the ordinance at issue, the Court must: (1) assess

whether Plaintiffs' activities deserve protection; (2) identify the nature of the forum involved; and

then (3) determine whether Arlington's justification for the restriction satisfies the appropriate

standard.  *See Netherland v. City of Zachary, La.*, 626 F. Supp. 2d 603, 606 (M.D. La. 2009) (citing

*Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 797 (1985)); *see also Hous.*

*Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 621-22 (5th Cir. 2007) (discussing

applicable law to determine constitutionality of ordinance regulating speech) (citations omitted).

Plaintiffs engage in protected speech by distributing copies of the United States Constitution

and gun rights literature on Arlington's streets and sidewalks.  The Supreme Court has held that

"'handing out leaflets in the advocacy of a politically controversial viewpoint . . . is the essence of

First Amendment expression'" and "'[n]o form of speech is entitled to greater constitutional

7

protection.'"  *See McCullen v. Coakley*, 134 S. Ct. 2518, 2536 (2014) (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995)); *see also United States v. Grace*, 461 U.S. 171, 176 (1983) ("There is no doubt that as a general matter peaceful picketing and leafletting are expressive activities involving 'speech' protected by the First Amendment.") (citations omitted); *Jamison v. State of Tex.*, 318 U.S. 413, 416 (1943) ("[O]ne who is rightfully on a street which the state has left open to the public carries with him there . . . the constitutional right to express his views in an orderly fashion.  This right extends to the communication of ideas by handbills and literature as well as by the spoken word.").  The parties do not dispute that Plaintiffs' activities are protected speech.[1]

It is also clear that Arlington's streets and sidewalks are traditional public fora.  The government is "'sharply circumscribed' in its right to restrain expression in 'places which by long tradition or by government fiat have been devoted to assembly and debate,'" *Serv. Emps. Int'l Union, Local 5 v. City of Hous.*, 595 F.3d 588, 595 (5th Cir. 2010) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)), and public places, such as streets and sidewalks, that are associated with the free exercise of expressive activities "are considered, without more, to be 'public forums.'"  *Grace*, 461 U.S. at 177; *see also Snyder v. Phelps*, 131 S. Ct. 1207, 1218 (2011) (quoting *Frisby v. Schultz*, 487 U.S. 474, 480 (1988)) (stating the Supreme Court has "'repeatedly referred to public streets as the archetype of a traditional public forum'"); *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009) (noting "government entities are strictly limited in their ability to regulate private speech" in "'traditional public fora'" such as public streets and parks) (citing *Cornelius*, 473 U.S. at 800); *Frisby*, 487 U.S. 481 (stating courts need not make

---

[1]  Arlington acknowledges that Plaintiffs' activities are considered leafletting and are protected under the First Amendment.  *See* Hearing Tr. at 51.

any "particularized inquiry into the precise nature of a specific street" because "all public streets are held in the public trust and are properly considered traditional public fora").

Peaceful picketing on matters of public concern in a traditional public forum "occupies a 'special position in terms of First Amendment protection.'" *Snyder*, 131 S. Ct. at 1218 (quoting *Grace*, 461 U.S. at 180). Plaintiffs' attempts to distribute copies of the Constitution and gun rights literature on Arlington's streets and sidewalks is "precisely the kind of speech in precisely the kind of place that the First Amendment aims to protect most." *See Traditionalist Am. Knights of Ku Klux Klan v. City of Desloge, Mo.*, 983 F. Supp. 2d 1137, 1145 (E.D. Mo. 2013). Thus, the Court now turns to whether Arlington's justification for the exclusion from the forum satisfies the requisite standard. *See Cornelius*, 473 U.S. at 797.

The appropriate standard applied to a regulation of speech in traditional public fora is determined by whether the regulation is content-based or content-neutral. *See Frisby*, 487 U.S. at 481; *Perry*, 460 U.S. at 45. To prohibit activity protected by the First Amendment in a quintessential public forum, "a content-based regulation must be 'necessary to serve a compelling state interest and . . . narrowly drawn to achieve that end . . . .'" *Hous. Chronicle*, 488 F.3d at 622 (quoting *Perry*, 460 U.S. at 45). A content-neutral regulation "must also be 'narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Id.* (quoting *Perry*, 460 U.S. at 45).

The parties dispute whether the City de facto discriminates in enforcing Section 15.02 based on the content of the message being conveyed because of Section 552.0071 of the Texas Transportation Code. *See* Pls.' Mem. Supp. 6-7, ECF No. 6; Def.'s Resp. 25, ECF No. 11; Pls.' Reply 7-8, ECF No. 13. For purposes of Plaintiffs' motion for injunctive relief, the Court will

assume without deciding that Section 15.02 is a content-neutral regulation of speech.

While it is not unusual to address the content-neutrality prong first, it is unnecessary at this stage of the proceedings to determine whether Section 15.02 is content-neutral or content-based because the Court finds that Plaintiffs have demonstrated a likelihood of success that Section 15.02 is not narrowly tailored to serve a significant government interest. *See McCullen* 134 S. Ct. at 2530 (stating it is "unexceptional to perform the first part of a multipart constitutional analysis first . . . even when the preliminary steps turn out not to be dispositive") (citations omitted); *see also id.* at 2541-42 (Scalia, J., concurring) (arguing there is "no principled reason" to decide whether statute is subject to strict scrutiny when it "does not survive the lesser level of scrutiny"; citing cases where Supreme Court "assum[ed] without deciding the logically antecedent point") (citations omitted); *City of Ladue v. Gilleo*, 512 U.S. 43, 53 & n.11 (1994) (assuming exemptions in ordinance "are free of impermissible content or viewpoint discrimination"); *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1099 (8th Cir. 2013) (assuming ordinance prohibiting distribution of literature during festival "should be treated as content-neutral"); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) (en banc) (assuming ordinance prohibiting in-roadway solicitation was content-neutral).

1.    Government Interest

Arlington has emphasized its strong interest in pedestrian and traffic safety. *See generally* Defs.' Resp., ECF No. 11; *see also* Hearing Tr. at 52 ("[T]his is a public safety issue . . . ."). Plaintiffs concede that Arlington's interest in promoting traffic safety and the unobstructed use of sidewalks and roadways is at least a significant governmental interest, Hearing Tr. at 29-30, and the Fifth Circuit has held that public safety is "a compelling interest at the heart of the government's

function . . . ." *See Hous. Chronicle*, 488 F.3d at 622 (citing *Int'l Soc'y for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494, 496-97 (5th Cir. 1989)); *see also Cox v. New Hampshire*, 312 U.S. 569, 574 (1941) (stating municipality may "impose regulations in order to assure the safety and convenience of the people in the use of public highways").

While Arlington has a strong interest in pedestrian and traffic safety, it "must do more than recite a significant government interest, even if it invokes public health and safety concerns of the highest order . . . ." *Traditionalist Am. Knights*, 983 F. Supp. 2d at 1147; *see also Johnson*, 729 F.3d at 1099 (stating government cannot merely "recite an interest that is significant in the abstract; there must be a genuine nexus between the regulation and the interest is seeks to serve") (citations omitted); *City of Angeles Mission Church v. City of Hous., Tex.*, 716 F. Supp. 982, 985 (S.D. Tex. 1989) (noting traffic control and safety are substantial government interests, "but that fact alone does not justify an attempted regulation of fundamental freedoms of expression") (citations omitted). Section 15.02 restricts Plaintiffs' First Amendment rights, and therefore, the burden falls on Arlington "to show the validity of its asserted interest and the absence of less intrusive alternatives." *See City of Angeles Mission Church*, 716 F. Supp. at 985 (citing *Elrod*, 427 U.S. 347; *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640 (1981)); *see also Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 118 (5th Cir. 1992).

2.    Narrow Tailoring

The ordinance at issue, amended Section 15.02, provides that a person may not occupy "a shoulder, improved shoulder, sidewalk, median or public right-of-way in the areas set out in Section 15.03" to solicit for the purpose of an exchange with the occupants of a vehicle, to sell any merchandise directly to the occupants of a vehicle, or to distribute "any object" directly to the

11

occupants of a vehicle. *See supra* Part I. The Court finds that Plaintiffs have shown a substantial likelihood of success on their claim that Arlington's ban on interactions between pedestrians and vehicles at particular intersections does not "sufficiently promote[] pedestrian and traffic safety so as to satisfy narrow tailoring." *See Traditionalist Am. Knights*, 983 F. Supp. 2d at 1148-49.

Regulations that control the time, place, and manner of expression "must be evaluated in terms of their general effect." *United States v. Albertini*, 472 U.S. 675, 688-89 (1985). To be narrowly tailored, an ordinance or statute must promote a substantial government interest that would be achieved less effectively absent the regulation, *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989), but the factual situation must also demonstrate "a real need for the government to act to protect its interests." *Johnson*, 729 F.3d at 1099 (citation omitted) (internal quotation marks omitted). An ordinance is considered "narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby*, 487 U.S. at 485 (citing *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808-10 (1984)). Conversely, an ordinance is not narrowly tailored if it "regulate[s] expression in such a manner that a substantial portion of the burden on speech does not serve to advance [the government's legitimate interests]." *Ward*, 491 U.S. at 799 (citing *Frisby*, 487 U.S. at 485). "[T]he Government . . . bears the burden of showing that the remedy it has adopted does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 665 (1994) (quoting *Ward*, 491 U.S. at 799).

While Arlington need not wait for accidents to justify safety regulations, *Sun-Sentinel Co. v. City of Hollywood*, 274 F. Supp. 2d 1323, 1331 (S.D. Fla. 2003), Arlington has failed to present any evidence to support its contention that Section 15.02 addresses the City's concerns over

pedestrian and traffic safety.  *See Krishna Consciousness*, 876 F.2d at 497-98 (discussing whether ordinance "meets the traffic flow and safety concerns expressed in the preamble").

Plaintiffs contend that Arlington did not conduct any study showing that Plaintiffs' activities were dangerous or created safety concerns, Compl. ¶ 22; Hearing Tr. at 26, and assert that they have been unable to find any information concerning accidents in Arlington during similar events, other than one accident in 1997 with a Shriner, even though they allege similar events, such as car washes and fund-raisers, are conducted year-around in Arlington.[2]  *See* Compl. ¶ 15; Pls.' Mem. Supp. Ex. A (Watkins Aff.), App. at 2, ECF No. 6-1.  Watkins testified that he has participated in "hundreds and hundreds" of walks, and nobody has been injured or cited for impeding traffic.[3]  Hearing Tr. at 3-4; Pls.' Reply Ex. A (Watkins Aff.), App. at 12, ECF No. 13.  Watkins also testified that Plaintiffs only provide literature to people who indicate they want it, Hearing Tr. at 3, 14, and only interact with people that are stopped at red lights and do not attempt to attract the attention of drivers while their vehicles are moving.  *Id.* at 14-15.

Plaintiffs also argue that the previous version of Section 15.02, which was in effect from 1995 until May 2014, was rarely enforced and assert that they are only aware of two citations ever being issued under the ordinance—which were given to the two Open Carry members.  *See* Hearing Tr. at 19; *see also id.* at 30 (stating Section 15.02 was "unenforced . . . for eighteen plus years," but

---

[2]  Arlington noted that on the day amended Section 15.02 went into effect, a child was killed while waiting to cross the street at the intersection of South Cooper Street and California Lane.  *See* Def.'s Resp. 19, ECF No. 11; Hearing Tr. at 52.  Arlington acknowledged, however, that "no form of distribution was involved."  *See* Def.'s Resp. 19, ECF No. 11.

[3]  The Court notes that rather than question Watkins about pedestrian and traffic safety concerns or introduce evidence concerning traffic issues, much of Arlington's cross-examination of Watkins focused on the presence of guns at Plaintiffs' events and Plaintiffs' interactions with police.  *See* Hearing Tr. at 7-13.

became "a crisis" when Plaintiffs became active); Compl. ¶ 22 ("No event precipitated this sudden interest in these restrictions other than the Open Carry events and public demonstrations . . . .").

Arlington's argument is supported by: (1) the Fifth Circuit's opinion in *Houston Chronicle Publishing Co. v. City of League City, Texas*, (2) YouTube videos from Plaintiffs' events,[4] and (3) general statements regarding drivers' "rights." *See generally* Def.'s Resp., ECF No. 11.  But the City has not provided any evidence that distribution of literature or engaging occupants of vehicles at these intersections causes accidents.  *Compare Hous. Chronicle*, 488 F.3d at 621 (noting city provided evidence that vendors in nearby cities had been seriously injured at intersection subject to ordinance), *and Krishna Consciousness*, 876 F.2d at 498 (stating testimony at trial supported contention that activity in question had resulted in accidents), *with Johnson*, 729 F.3d at 1100 (finding board failed to make satisfactory showing that regulation was narrowly tailored where board "presented little evidence" that regulation furthered significant government interest), *Traditionalist Am. Knights*, 983 F. Supp. 2d at 1149 (finding city presented "insufficient evidence" that distribution in roadways caused accidents), *and Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 798 (S.D. Tex. 2013) (noting city failed to provide any "credible evidence" that day laborer solicitation caused accidents).  Rather than introduce evidence showing that Section 15.02 is narrowly tailored to meet the City's pedestrian and traffic safety concerns, Arlington states that it merely plans "to stand on the ordinance."  *See* Hearing Tr. at 16.  Arlington's counsel also acknowledges that Section 15.02 was amended because of the threat of litigation, rather than safety

---

[4] Plaintiffs contend that half of the videos cited by Arlington were taken after Section 15.02 was amended.  *See* Hearing Tr. at 26.  Further, while some of the videos involve Plaintiffs' interactions with occupants of vehicles, the Court notes that some of the videos seem to be unrelated to the issue of pedestrian and traffic safety.

14

concerns.[5]  *See id.* at 35 ("The City of Arlington changed the ordinance.  It was certainly prompted by the threat of the lawsuit.").

The Court also finds that the exceptions to Section 15.02 weigh against a finding that the ordinance is narrowly tailored.  Exceptions to "an otherwise legitimate regulation of a medium of speech . . . may diminish the credibility of the government's rationale for restricting speech in the first place."  *See City of Ladue v. Gilleo*, 512 U.S. 43, 52-53 (1994) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 424-26 (1993)); *see also Hous. Chronicle*, 488 F.3d at 622 (noting repealed sections of ordinance included various exemptions; finding non-repealed portion of ordinance, when "[v]iewed in isolation" was not facially unconstitutional); *Traditionalist Am. Knights*, 983 F. Supp. 2d at 1149 (quoting *Johnson*, 729 F.3d at 1100) (stating underinclusiveness of ordinance "'raises serious doubts about whether the government is in fact pursuing the interest it invokes'"); *Jornaleros de Las Palmas*, 945 F. Supp. 2d at 798 (finding ordinance not narrowly tailored to achieve goal of promoting traffic safety, in part, because law "incorporates exceptions for certain types of roadway solicitation, which presumably pose an equal risk to public safety").

Section 552.0071 of the Texas Transportation Code provides that a local authority must allow "employees or agents of the local authority" to "stand in a roadway to solicit a charitable contribution" if the persons meet certain requirements.[6]  *See* Tex. Transp. Code § 552.0071(a).

---

[5]  Arlington's counsel also stated that he was unsure "what was considered or not considered" by Arlington during the preparation of Section 15.02.  *See* Hearing Tr. at 59.

[6]  "Local authority" includes "a county, municipality, or other local entity authorized to enact traffic laws under the laws of this state . . . ."  *See* Tex. Transp. Code § 541.002(3)(A).  Some of the requirements include filing a written application that includes the date and times of the solicitation, where the solicitation is to occur, and the number of solicitors involved, and the applicant must furnish proof of liability insurance in the amount of at least $1 million to cover any damages arising from the solicitation.  *See id.* § 552.0071.

Arlington argues that Section 552.0071 is not incorporated into Section 15.02, but the Court finds that Section 552.0071 is an exception to Section 15.02.

If possible, the Court must read Section 552.0071 and Section 15.02 in such a way so as to leave both in effect. *See, e.g.*, *City of Richardson v. Responsible Dog Owners of Tex.*, 794 S.W.2d 17, 19 (Tex. 1990) ("A general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached.") (citations omitted) (internal quotation marks omitted); *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984) ("Generally, courts are to construe statutes so as to harmonize with other relevant laws, if possible.") (citation omitted). Section 15.02 is consistent with Section 552.0071 if employees or agents of the local authority, that meet the applicable requirements, are permitted to stand in a roadway in Arlington to solicit charitable contributions.[7] Section 15.02(B.) also states that the ordinance "does not relieve responsibility for compliance with all federal, state, and local laws, ordinances, rules, and regulations," App. Supp. Def.'s Resp. Ex. 3 (Am. Section 15.02), App. at 69, ECF No. 11-3, and Arlington acknowledges that Section 552.0071 is "a mandatory state law" that the City must "obey" and "comply" with. *See* Hearing Tr. at 54-56. Accordingly, Section 552.0071 of the Texas Transportation Code is an exception to Section 15.02 and Plaintiffs have shown that Arlington does not have a significant government interest in allowing certain groups to solicit for charitable contributions in roadways while prohibiting others from distributing literature to occupants of vehicles.

---

[7] Plaintiffs also allege that other organizations have been permitted to interact with occupants of vehicles. *See* Pls.' Mem. Supp. Ex. A (Watkins Aff.), App. at 2, ECF No. 6-1 (noting organizations such as the Shriners, churches, and local band and sports members interact with passing motorists). Arlington has not provided any evidence to rebut these allegations, other than stating that Section 15.02 applies to Shriners. *See* Def.'s Resp. 25, ECF No. 11.

Furthermore, in addition to solicitation, it is noteworthy that Section 15.02 prohibits pedestrians from distributing literature to and having exchanges with occupants of vehicles. Section 15.02 specifically prohibits a person from soliciting or attempting to solicit "for purpose of an exchange" with the occupants of a vehicle or distributing or attempting to distribute "any object" to the occupants of a vehicle. Def.'s App. Supp. Ex. 3 (Am. Section 15.02), App. at 69, ECF No. 11-3. "Exchange" in Section 15.02 is "used its broadest sense." *Id.* (Am. Section 15.01), App. at 68; *see also* Hearing Tr. at 61 (Arlington's counsel noted the City is "trying to read exchange broadly").

The Supreme Court has recognized that there is a distinction between "the purely communicative aspect of oral advocacy on the one hand, and the solicitation of contributions, which can prove more disruptive of order and crowd flow, on the other hand" because "solicitation and selling require 'stopping [individuals] momentarily or for longer periods as money is given or exchanged for literature.'" *See Krishna Consciousness*, 876 F.2d at 497 (quoting *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 653 (1981)). Similarly, the distribution of literature is different from solicitation because "a recipient 'need not ponder the contents of a leaflet or pamphlet in order to mechanically take it out of someone's hand.'" *Johnson*, 729 F.3d at 1101 (quoting *United States v. Kokinda*, 497 U.S. 720, 734 (1990) (plurality)); *see also Acorn v. City of Phoenix*, 798 F.2d 1260, 1269 (9th Cir. 1986), *overruled in part by Comite de Jornaleros*, 657 F.3d 936 ("Unlike oral advocacy of ideas, or even the distribution of literature, successful solicitation requires the individual to respond by searching for currency and passing it along to the solicitor. Even after the solicitor has departed, the driver must secure any change returned, replace a wallet or close a purse, and then return proper attention to the full responsibilities of a motor vehicle

17

driver."). Accordingly, "courts have consistently distinguished solicitation from distribution . . . ."[8]
*See Traditionalist Am. Knights*, 983 F. Supp. 2d at 1150 (citing cases upholding bans on in-roadway
solicitation and cases striking down similar bans on distribution); *see also Krishna Consciousness*,
876 F.2d at 498 (upholding ban on in-roadway solicitation where ordinance allowed for "[d]irect
communication of ideas, including the distribution of literature to occupants in vehicles").

The Court also finds that Section 15.02 is overinclusive and burdens substantially more
speech than is necessary to achieve its interest in pedestrian and traffic safety.  An ordinance must
"'focus[] on the source of the evils the city seeks to eliminate . . . and eliminate[] them without at
the same time banning or significantly restricting a substantial quantity of speech that does not create
the same evils.'" *Comite de Jornaleros*, 657 F.3d at 947 (quoting *Ward*, 491 U.S. at 799 n.7).  Unless
the vehicle is "lawfully parked," amended Section 15.02 prohibits a person from standing "on or in
any manner occup[ying] a shoulder, improved shoulder, sidewalk, median or public right-of-way in
the areas set out in Section 15.03" to (1) solicit or attempt to solicit "for purpose of an exchange with
the occupants of a vehicle"; (2) sell or offer for sale "any merchandise or service directly to the
occupants of a vehicle"; or (3) distribute or attempt to distribute "any object directly to the occupants
of a vehicle."  *See* Def.'s App. Supp. Ex. 3 (Am. Section 15.02), App. at 69, ECF No. 11-3.

Rather than merely prohibiting people from entering roadways to interact with occupants of
vehicles, amended Section 15.02 prohibits pedestrians from interacting with occupants of vehicles
even while the pedestrian is standing on the sidewalk or on the shoulder and the vehicle is stopped.
The amended Section 15.02 also establishes 500 and 1000 foot zones for the intersections listed in

---

[8]  The Court notes that Section 552.0071 of the Texas Transportation Code and Arlington's "informal
policy" with the City's fire fighters allows employees and agents of the local authority "to stand in a roadway
to *solicit* a charitable contribution . . . ."  *See* Tex. Transp. Code § 552.0071(a) (emphasis added).

Sections 15.03(A.) and (B.), but the City failed to provide any evidence as to how these zones were determined.[9] These restrictions burden substantially more speech than is necessary to further Arlington's interests in pedestrian and traffic safety. *See Hous. Chronicle*, 488 F.3d at 616 (upholding ordinance that prohibited interactions between pedestrian "who is within a public roadway" and occupants of vehicles, but permitted pedestrian to interact with occupants of vehicles "so long as he or she remains on the surrounding sidewalks and unpaved shoulders"). The ordinance covers all manner of exchanges between pedestrians and occupants of vehicles at the areas identified in Section 15.03, such as an individual hailing a cab and discussing the fare with the driver within 500 or 1000 feet of the intersections listed in Section 15.03(A.) and (B.) or an individual standing in the road or on the sidewalk before, during, or after a Texas Rangers or Dallas Cowboys game soliciting drivers to park in her parking lot.[10] *See Comite de Jornaleros*, 657 F.3d at 948 n.7 (noting plaintiffs meet their burden in showing statute is overbroad by describing instances of arguable overbreadth of the contested law) (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 & n.6 (2008); *City of Hous. v. Hill*, 482 U.S. 451, 466-67 (1987)).

Arlington also has a number of less restrictive means of achieving its stated goals of pedestrian and traffic safety. While the Court "cannot apply a stringent least-restrictive-alternative

---

[9] While Arlington argues that the ordinance is narrowly tailored because they identified specific intersections that are subject to Section 15.02, Def.'s Resp., ECF No. 11; Hearing Tr. at 35-36, 39, 45, 47, Arlington failed to provide any evidence as to why these particular intersections were selected or any justification for the 500 and 1000 foot zones articulated in Sections 15.03(A.) and (B.), other than noting that ordinance is "less restrictive" than the ordinance at issue in *Houston Chronicle*, Def.'s Resp. 19, ECF No. 11, and that the City was trying "not to be vague." Hearing Tr. at 46-47. When asked what evidence led the City to conclude that the 500 and 1000 foot zones were appropriate, counsel for Arlington stated that he was unaware of how these zones were determined. *Id.* at 62.

[10] Section 15.03 specifically states that the ordinance applies to the parking lots at the locations listed in Section 15.03(D.). *See* Def.'s App. Supp. Ex. 3 (Am. 15.03), App. at 75, ECF No. 11-3.

19

test," it also "cannot uphold [an ordinance] if it 'burden[s] substantially more speech than is necessary' to protect traffic safety and flow." *Comite de Jornaleros*, 657 F.3d at 949 (quoting *Ward*, 491 U.S. at 799). Arlington acknowledges that there are existing traffic ordinances that prohibit people from entering the roadway. *See* Hearing Tr. at 39; *see also id.* at 4 (Watkins testified that "nobody has ever been cited for impeding traffic"). Arlington can enforce the law prohibiting pedestrians from suddenly leaving "a curb or other place of safety" and entering the crosswalk "in the path of a vehicle so close that it is impossible for the vehicle operator to yield," *id.* § 552.003(b), the prohibition against "walk[ing] along and on a roadway if an adjacent sidewalk is provided and is accessible," *id.* § 552.006(a), or Arlington's ordinance prohibiting a person from obstructing a public sidewalk, shoulder, street, or roadway.[11] Def.'s App. Supp. Ex. 3 (Section 6.01), App. at 41, ECF No. 11-3. The Court "cannot ignore the existence of these readily available alternatives." *See Comite de Jornaleros*, 657 F.3d at 949-50 (citations omitted); *see also Jornaleros de Las Palmas*, 945 F. Supp. 2d at 798 (noting defendants failed to show "why other traffic laws which do not target speech are inadequate to serve the public's legitimate interest in traffic safety and control").

Arlington also contends that Plaintiffs cannot show a substantial likelihood of success on the merits because they have "ample locations for demonstrations." The City notes that Section 15.02 does not prohibit Plaintiffs from conducting their "walks" or demonstrating; it only prohibits them from interacting with occupants of vehicles in specific areas of the City. *See* Def.'s Resp. 22-23, ECF No. 11; Hearing Tr. at 45, 53. Plaintiffs assert, however, that their walks allow them to

---

[11] The Court need not and does not expressly endorse any of these measures. *See McCullen*, 134 S. Ct. at 2530 (stating Court "need not (and do[es] not) endorse any of [the less-restrictive alternative measures]" discussed in Part IV); *see also id.* at 2537 (discussing other "options that could serve [State's] interests just as well, without substantially burdening the kind of speech in which petitioners wish to engage").

"interact with large numbers of people and exercise their First Amendment right[s]," and argue that the ordinance "effectively removes all streets with significant traffic." *See* Compl. ¶¶ 18, 25; *see also* Pls.' Mem. Supp. 6, ECF No. 6 ("The law prohibits interaction on nearly every arterial street in Arlington, eliminating from consideration every street that has any significant traffic . . . ."); *id.* at 7 ("Open Carry members wish to speak on certain sidewalks.").

The Supreme Court has observed that, in the context of petition campaigns, "'one-on-one communication' is 'the most effective, fundamental, and perhaps economical avenue of political discourse,'" and that "'handing out leaflets in the advocacy of a politically controversial viewpoint . . . is the essence of First Amendment expression . . . .'" *See McCullen*, 134 S. Ct. at 2536 (quoting *McIntyre*, 514 U.S. at 347; *Meyer v. Grant*, 486 U.S. 414, 424 (1988)). Further, "some forms [of expression]—such as normal conversation and leafletting on a public sidewalk—have historically been more closely associated with the transmission of ideas than others," and therefore, being able to "chant[] slogans and display[] signs" is not an adequate replacement where the advocates believe that their goal can only be accomplished through one-on-one, consensual conversations. *See id.*

Here, the fact that Plaintiffs can have their walks in other parts of the City or that they are able to walk down the streets listed in Section 15.03 without interacting with occupants of vehicles "misses the point." *See id.* at 2536. To convey their message, Plaintiffs rely on their ability to have conversations and distribute literature. Plaintiffs seek out intersections with significant traffic to increase the frequency of these interactions and prohibiting Plaintiffs from interacting with citizens on the streets in Arlington with significant traffic imposes serious burdens on Plaintiffs' speech and compromises their ability to interact and distribute their literature to other citizens. *See McCullen*, 134 S. Ct. at 2535-36. The Court cannot "downplay" these burdens. *See id.* at 2536.

One of the virtues of traditional public fora is that listeners may encounter speech that they might otherwise tune out and these public fora "remain one of the few places where a speaker can be confident that he is not simply preaching to the choir." *See id.* at 2529. The fact that Plaintiffs' tactics or message may cause some people to be uncomfortable is not a proper motivation for limiting Plaintiffs' free speech rights. *See* Hearing Tr. at 44 (counsel for Arlington agreed that the fact that people are uncomfortable with Plaintiffs' methods is an inappropriate motivation for the government to take action).

Finally, the Court will address Arlington's argument that Plaintiffs' claims are foreclosed by controlling precedent. Arlington relies heavily on the Fifth Circuit's opinion in *Houston Chronicle Publishing Co. v. City of League City, Texas*, in which the city passed an ordinance that provided:

> No person who is *within a public roadway* may solicit or sell or distribute any material to the occupant of any motor vehicle stopped on a public roadway in obedience to a *traffic control signal light*. It is specifically provided, however, that a person, other than a person twelve years of age or younger, may solicit or sell or distribute material to the occupant of a motor vehicle on a public roadway *so long as he or she remains on the surrounding sidewalks and unpaved shoulders, and not in or on the roadway itself, including the medians and islands.*

488 F.3d at 616. The city argued that the ordinance was intended to prohibit the dangerous activity of solicitors entering busy traffic intersections and demonstrated that the ordinance was passed in response to vendors in nearby cities being seriously injured at busy intersections. *Id.* at 621. The Fifth Circuit held that prohibiting street solicitations at intersections controlled by traffic lights was a "reasonable means" to narrowly tailor the ordinance's reach. *See id.* at 622.

Arlington argues that it used the ordinance found in *Houston Chronicle* as a model, Hearing Tr. at 36; Def.'s Resp., ECF No. 11, but the facts concerning Section 15.02 are materially different

than the facts presented in *Houston Chronicle*. First, while the city in *Houston Chronicle* demonstrated that the ordinance was necessary to address safety concerns, Arlington has failed to provide *any* evidence that their ordinance is narrowly tailored to serve the City's interests in pedestrian and traffic safety. Second, the ordinance in *Houston Chronicle* specifically allowed a person to stand on the sidewalks and unpaved shoulders to interact with occupants of vehicles, while Section 15.02 prohibits this activity. Although Arlington argues it modeled Section 15.02 after the ordinance in *Houston Chronicle*, and contends that Plaintiffs' activities are dangerous because they enter lanes of traffic, Arlington has not provided any explanation as to why it was necessary to prohibit individuals from interacting with occupants of vehicles while standing on the sidewalks or shoulders. Furthermore, while the ordinance in *Houston Chronicle* was found to have no discriminatory intent, Plaintiffs allege that Arlington is enforcing Section 15.02 because of its disagreement with Plaintiffs' tactics and message, and not because of pedestrian and traffic safety concerns. *See* Compl. ¶¶ 20-22; Pls.' Mem. Supp. Ex. A (Watkins Aff.), App. at 2-3, ECF No. 6-1; Pls.' Reply Ex. A (Watkins Aff.), App. at 16, 18-19, ECF No. 13; *see also* Hearing Tr. at 35 (acknowledging amendment of Section 15.02 was "prompted by the threat of the lawsuit").

Based on the foregoing, the Court finds that Plaintiffs have established a substantial likelihood of success on the merits of their First Amendment free speech claim.

## B.      Remaining Factors

To be entitled to injunctive relief, a plaintiff must clearly establish all four elements. *See Miss. Power & Light*, 760 F.2d at 621. The parties do not dispute that "[t]he loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Palmer*, 579 F.3d at 506 (citing *Elrod*, 427 U.S. at 373; *Deerfield*

23

*Med. Ctr.*, 661 F.2d at 338) (internal quotation marks omitted); *see also* Hearing Tr. at 66. Therefore, the Court finds that Plaintiffs have established a substantial threat of irreparable harm.

Arlington contends that the threatened injury to Plaintiffs does not outweigh the harm that will result if the injunction is granted because Plaintiffs have alternative locations to exercise their rights. Def.'s Resp. 20, ECF No. 11. The Court finds that Plaintiffs have established that the threatened injury outweighs any harm Arlington will suffer as a result of the injunction. *See Opulent Life Church*, 697 F.3d at 298 (stating government must "present powerful evidence of harm to its interests" when plaintiff shows substantial likelihood of success on First Amendment claim). If the injunction is not issued, Plaintiffs will be denied their First Amendment rights whereas Arlington has not shown that it is at risk of suffering any credible harm if the injunction is issued. *See, e.g.*, *Fund for Louisiana's Future v. La. Bd. of Ethics*, ___ F. Supp. 2d ___, 2014 WL 1764781, at * 10 (E.D. La. 2014); *Wexler v. City of New Orleans*, 267 F. Supp. 2d 559, 568 (E.D. La. 2003); *Sund v. City of Wichita Falls, Tex.*, 121 F. Supp. 2d 530, 553-54 (N.D. Tex. 2000) (Buchmeyer, C.J.).

Arlington also argues that granting the injunction will disserve the public interest because it will bar the enforcement of a public safety ordinance. *See* Def.'s Resp. 9, ECF No. 11. It is well established that "'injunctions protecting First Amendment freedoms are always in the public interest.'" *See Texans for Free Enterprise v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)); *see also, e.g.*, *Jornaleros de Las Palmas*, 945 F. Supp. 2d at 801 ("The public interest is always served by upholding the principles embodied in the First Amendment.") (citing *Cate v. Oldham*, 707 F.2d 1176, 1190 (11th Cir. 1983)); *RTM Media, L.L.C. v. City of Hous.*, 518 F. Supp. 2d 866, 875 (S.D. Tex. 2007) ("It is clearly in the public interest to enjoin an ordinance that restricts the public's

constitutional right to freedom of speech."); *Wexler*, 267 F. Supp. 2d at 568-69 ("The public interest is best served by enjoining the effect of any ordinance which limits potentially constitutionally protected expression until it can be conclusively determined that the ordinance withstands constitutional scrutiny."). The Court finds that the injunction will not disserve the public interest.

Having found that Plaintiffs are likely to prevail on their First Amendment speech claims and that the remaining factors have been met, the Court finds that Plaintiffs are entitled to a preliminary injunction of Section 15.02 of the Streets and Sidewalks Chapter of the Code of the City of Arlington.

### C.      Security

"The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Fifth Circuit has stated that the district court "may elect to require no security at all." *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 629 (5th Cir. 1996) (citation omitted) (internal quotation marks omitted); *see also Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 235 (S.D. Tex. 2011). Plaintiffs assert that the Court should not require Plaintiffs to give security because Arlington will not suffer any pecuniary or other damages as a result of the injunction. *See* Pls.' Mot. 2-3, ECF No. 5. Arlington has not addressed whether Plaintiffs should be required to give security.

The Court finds that Arlington will not suffer any significant monetary or other damages if the injunction is granted and later dissolved, and therefore, the Court finds no bond is necessary. *See Free Market Found. v. Resiman*, 540 F. Supp. 2d 751, 759 (W.D. Tex. 2008) (citing *Kaepa, Inc.*, 76 F.3d at 628 (5th Cir. 1996); *Corrigan Dispatch Co.*, 569 F.2d at 303); *see also Incubus Invs., L.L.C.*

*v. City of Garland*, No. 3:03-cv-2039-K, 2003 WL 23095680, at *4 (N.D. Tex. Dec. 17, 2003) (Kinkeade, J.) (dispensing with requirement of security where plaintiff established probability of success on the merits and it appeared unlikely government would incur any significant cost as a result of injunction).

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs' Combined Application for Preliminary Injunction and Temporary Restraining Order (ECF No. 5) is **GRANTED**.  It is **ORDERED** that Defendant City of Arlington is hereby preliminarily enjoined from taking any action to enforce Section 15.02 of the Streets and Sidewalks Chapter of the Code of the City of Arlington until a final trial on the merits.

**SO ORDERED** on this **14th day** of **July, 2014**.


_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE