UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **KORY WATKINS,** § | |
| Individually, and in his capacity as coordinator for § | |
| **OPEN CARRY TARRANT COUNTY,** § | |
| Plaintiffs, § | **Case: 4:14-cv-381** |
| § | |
| v. § | |
| § | |
| **CITY OF ARLINGTON** § | |

## PLAINTIFFS' SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

1. Plaintiffs provide this memorandum in support of Plaintiffs' Motion for Summary Judgment ("Motion") in which Plaintiffs request that the Court render final summary judgment against the City of Arlington by a) declaring that Section 15.02 of the "Streets and Sidewalks" Chapter of the Code of the City of Arlington as passed in October 2014 (the "Sidewalk Ordinance") is an unconstitutional prior restraint on speech, both on a facial and "as applied" standard, and b) issuing a permanent injunction restraining the City from enforcing the Sidewalk Ordinance.

2. Plaintiffs herein particularly incorporate by reference the Court's Memorandum Opinion and Order issued on July 17, 2014, ECF No. 19 ("Injunction"), which provided an analysis regarding many of the elements necessary to examine in Plaintiffs' Motion and which remains valid.

3.     Plaintiffs also particularly incorporate by reference the Court's Order issued on January 8, 2015, ECF No. 45, that found Plaintiffs have standing in this case.

## II. Legal Standard for Constitutional Analysis of an Ordinance

4.     To determine the constitutionality of the ordinance at issue, the Court must: (a) assess whether Plaintiffs' activities deserve protection; (b) identify the nature of the forum involved; and then (c) determine whether Arlington's justification for the restriction satisfies the appropriate standard. *Netherland v. City of Zachary, La.*, 626 F. Supp. 2d 603, 606 (M.D. La. 2009) (citing *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 797 (1985)); see also *Hous. Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 621-22 (5th Cir. 2007) (discussing applicable law to determine constitutionality of ordinance regulating speech) (citations omitted).

## III. Analysis of the Sidewalk Ordinance for Facial Constitutionality

5.     Plaintiffs can show that the Sidewalk Ordinance is a facially unconstitutional prior restraint on speech, as follows:

### A. Plaintiffs' activities deserve protection.

6.     Plaintiffs distribute copies of the United States Constitution and gun rights literature on Arlington's streets and sidewalks. App., Exh. A, ¶¶4, 20.[1]

---

[1] All references to "App." refers to Plaintiffs' Appendix Supporting Plaintiffs' Motion for Summary Judgment, filed concurrently with this document.

7.   This Court has already determined that Plaintiffs' activities are recognized by the Supreme Court as the essence of First Amendment expression and the City of Arlington agreed that Plaintiffs' activities are protected speech, warranting protection, citing *McCullen v. Coakley*, 134 S. Ct. 2518, 2536 (2014), among many others. ECF No. 19, p.7-8.

### B. Public streets are a traditional public fora.

8.   As stated, Plaintiffs distribute copies of the United States Constitution and gun rights literature on Arlington's streets and sidewalks. App., Exh. A, ¶¶4, 20.

9.   This Court has already determined that the public sidewalks and public streets are traditional public fora, citing *Traditionalist Am. Knights of Ku Klux Klan v. City of Desloge, Mo.*, 983 F. Supp. 2d 1137, 1145 (E.D. Mo. 2013), among many others. ECF No. 19, p.8-9.

### C. The Sidewalk Ordinance fails the "content-neutral" standard.

10.  Plaintiffs believe the Sidewalk Ordinance is content-based, because fire fighters will have a favored procedure not available to all. App., Exh. A, ¶12.

11.  But even if the Sidewalk Ordinance is content-neutral, it must meet the intermediate scrutiny test. *Netherland v. City of Zachary*, 626 F. Supp. 2d 603, 607 (M.D. La. 2009).

12.  As noted by the Injunction and paraphrasing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983) at 45, a content-neutral regulation in a

traditional public forum must be necessary to serve a compelling state interest, narrowly drawn to achieve that end, narrowly tailored to serve a significant government interest, and leave ample alternative channels of cooperation. *Id.*

13. After the Court issued the Injunction, the City amended its Sidewalk Ordinance to mirror the language found acceptable in *Houston Chronicle Publ. Co. v. City of League City*, 488 F.3d 613 (5th Cir. Tex. 2007), and now argues that, because the Fifth Circuit found its language acceptable in *Houston Chronicle*, it is acceptable in this case. *See* Arlington's Amended Answer, ¶1.30, ECF No. 40.

14. The City has missed many differences between this case and *Houston Chronicle*, as well as other distinguishing elements of the cases.

   a) In *Houston Chronicle*, Houston demonstrated that "newspaper street-vendors in nearby cities had been seriously injured at intersections similar to [those of Houston]." *Id*. at 621. In the case at bar, no one has been injured. This law sat dormant for more than a decade, rarely if ever used in this context, until Open Carry became politically active. In the process of this current revision of the Sidewalk Ordinance, the City has compiled a few statistics to show that some accidents have occurred in Arlington, but there is no analysis regarding how or why accidents are rising, or if they are even rising when controlled for population, or whether the accident statistics are even applicable to the law. Opposing council speaks at 34 minutes into the

videostream, and states that there is an "epidemic of pedestrian injuries" in Texas. The video is can be seen at http://arlingtontx.granicus.com/MediaPlayer.php?view_id=2&clip_id=1630. Mr. Fugate never even attempts to show any relevance of those statistics with a need to stop literature distribution. As opposed to Houston Chronicle, where the city ordinance was sparked by multiple accidents that nearby cities had suffered, Arlington provided a report of Pedestrian Crashes by Year and Month (App., Exh. F, p. 62-65, COA 575-78) and Pedestrian Involved Crashes (App, Exh. F, p. 66-125, COA 579-638), neither of which indicate that even a single accident could be traced to deliberate pedestrian-motorist interaction, though many of the descriptions are detailed and discuss cell phone use, backing up, following too closely, and failed to pass on left safely. In the staff reports that are supposed to be providing supporting evidence, the reports suggests that drunk pedestrians walking at night is a major problem, rather than political activists distributing the United States Constitution:

> "There is an uneven distribution of pedestrian deaths among the states, with three (California, Texas and Florida) accounting for one-third of the 4,743 deaths in 2012. In nine states there were fewer than ten pedestrian deaths in 2012. Pedestrian deaths are largely an urban phenomenon, frequently occurring at night and often involving alcohol consumption by pedestrians. People age 70 and older have the highest per capita pedestrian death rate; very few children are involved, a change from earlier years."

  Exh. F., p.126, COA 694 (Staff Report, Exh. 12).

The clear intention of the staff reports is to collect some evidence that the City can use to say that it has support for the law. Though this Court may not required to thoroughly analyze the evidence to determine if the City's actions are the exact proper reaction, it is not required to approve sham excuses for evidence just so the City can check off a court-required "we have some evidence" box on the way to pass what would otherwise be an unconstitutional law.

b) In *Houston Chronicle*, the Houston Chronicle focused on newspaper solicitations and charitable contributions; its goals were to argue for solicitation. *Id*. But the case at bar is focused only on distribution of political literature, and not a commercial exchange. This difference is material.

 i. In *Houston Chronicle*, the Fifth Circuit cites (while approving the City's model language to regulate commercial exchange) the case of *Int'l Soc'y for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494, 495-96 (5th Cir. 1989), which discusses how the making of change can be distracting, and differentiates commercial activity from literature distribution.

 ii. *Krishna Consciousness* includes a direct quote from *Acorn v. City of Phoenix*, 798 F.2d 1260 (9th Cir. 1986):

> "Unlike oral advocacy of ideas, or <u>even the distribution of literature</u>, successful solicitation requires the individual to respond by searching for currency and passing it along to the solicitor. Even after the solicitor has departed, the driver must secure any change returned, replace a wallet or close a purse, and then return proper attention to the full responsibilities of a motor vehicle driver. The direct personal solicitation from drivers distracts them from their primary duty to watch the traffic and potential hazards in the road, observe all traffic control signals or warnings, and prepare to move through the intersection."

*Acorn*, 798 F.2d at 1269 (underlining added for emphasis.)

   iii.   Thus, *Houston Chronicle* did not address the nuance of non-commercial, purely political literature distribution. To the contrary, the cases that the Fifth Circuit cited in *Houston Chronicle* included language *favoring* Plaintiffs' activity as protected political speech which could not be prohibited under the circumstances of this case.

c) Arlington has admitted that it has cited zero individuals for obstructing streets pursuant to Tex. Penal Code § 42.03, which allows police to cite individuals who "render passage unreasonably inconvenient or hazardous." § 42.03(b). Counsel could not find any discussion of this law in *Houston Chronicle*, leading to the conclusion that in the court's analysis of this case at the trial level, this law was not discussed. However, one cannot say that a law which prevents an individual from going to a vehicle in center lane of a four-lane street at any time, day or night, and irrespective of other traffic, can be considered "narrowly tailored" when the City has at its disposal right

  now a law that prevents individuals from causing vehicle passage unreasonably hazardous.

d) Arlington has aggressively begun building bike lanes on its streets. According to the Section 15.01 of the "Streets and Sidewalks" Chapter of the Code of the City of Arlington, the word "roadway" includes the entire improved surface of the public street, which necessarily includes any of the five-foot bike lanes. If political activists are not allowed to enter these five-foot wide lanes in which cars are not permitted and which count as "streets" for purposes of the Sidewalk Ordinance, the bike lanes become free speech buffer zones unsupported by any evidence showing its necessity. This was not an issue or discussed in Houston Chronicle, and is strongly disfavored, as generally demonstrated in *Operation Rescue-National v. Planned Parenthood*, 975 S.W.2d 546 (Tex. 1998), where the Supreme Court concluded that a governmental body implementing a free speech buffer zone must meet the constitutional standard of showing that no less burdensome means exists. *Id.* at 562. It may be that Arlington is not deliberately created these free speech zones, but Plaintiffs raised the issue long ago, and the City has not acted to amend the Sidewalk Ordinance so that individuals can enter the bike lanes to reach motorists. It should also be noted that the City is using the outside street lanes as free speech buffer zones to unreasonably

keep political speech relegated out of the central street lanes, though it has performed no substantive demonstration regarding the efficacy of that approach. Thus, Plaintiffs must ask the Court for relief.

15. Plaintiffs have also noticed that the City has indicated that it may interpret "street" to include sidewalks. Open Carry is confident that the Court would view such an interpretation as an impermissible ban of literature distribution that is clearly unconstitutional. *See* Arlington's Amended Answer, ¶1.33, ECF No. 40.

16. In summary the distinguishing characteristics of this case from *Houston Chronicle*: a) Plaintiffs are involved in distribution of literature instead of commercial exchange of goods for money, b) no demonstrated need for a new law, in comparison with multiple accidents cited to support a new law that existed in the *Houston Chronicle*, c) *Houston Chronicle* did not consider unused laws that were more narrowly tailored and fit the need more closely, but the City is aware of the state's law regarding Obstruction and has never used it, d) there was no group of disfavored political demonstrators to which the City Council of League City was clearly antagonistic; and lastly e) no evidence in League City of the creation of free speech buffer zones by combining its Sidewalk Ordinance with bike lanes.

17. Plaintiffs do not dispute that safety on public streets is a compelling state interest, but have demonstrated that the City has failed to show that the Sidewalk Ordinance is narrowly drawn to achieve that end. It is self-evident from the City's

own records that it can show zero accidents due to the distribution of literature to motorists, and it doesn't appear to have ever cited any individual for obstructing traffic under the law that it has available to it right now that appears specifically designed to address pedestrian interference with traffic. App., Def.'s Initial Disclosures, Exh. I, p. 167, COA_0330.

18.     Thus, Plaintiffs contend the Sidewalk Ordinance is an unconstitutional restriction, as it impermissibly restricts the place and manner of the exercise of free speech that is not narrowly tailored to achieve a compelling governmental interest.

### IV. The Sidewalk Ordinance fails the "content-based" standard.

19.     Plaintiffs' argument above assumes the Sidewalk Ordinance is content neutral, but alternatively, Plaintiffs can demonstrate that the Sidewalk Ordinance is content-based, and is therefore is required to meet a "strict scrutiny" analysis. *Netherland v. City of Zachary, La.*, 626 F. Supp. 2d 603, 607 (M.D. La. 2009).

20.     In addition to the requirements which the Sidewalk Ordinance must meet for the content neutral test, the strict scrutiny test requires Arlington to show that the restriction is narrowly tailored to promote a compelling governmental interest. Further, if there is a less restrictive alternative available, the governmental restriction cannot stand. *Id*.

21.     The City of Arlington is obligated to follow state law, which requires it to allow state employees to solicit in streets if they are authorized, and further

provides a set of regulatory limitations on municipalities which wish to limit those solicitations. Tex. Transp. Code Ann. § 552.0071, ECF. No. 13, p.13.

22. The City's new Sidewalk Ordinance does not state that it specifically provides a different set of regulations for state employees. However, the City has stated explicitly that it will comply with the state's requirements, and has promulgated a form it expects to use with state employees who wish to solicit from a street. *See* Solicitation Application, ECF. No.38-1, p.10-11.

23. Opposing counsel has admitted the City will treat state employees under the state's different requirements, saying "The City will comply with the state law, as it is required to do." App., Exh. E.

24. This issue was raised during the appeal of Houston Chronicle, but the Fifth Circuit refused to look at the issue because it was not raised at the trial court. *Houston Chronicle,* 488 F.3d at 622-23. Plaintiffs in this case have raised this issue in their petition. Plaintiffs' First Amended Verified Complaint, ¶36, ECF. No. 38.

25. Therefore, the City has a law that is content-based, though the City has a less restrictive and more narrowly tailored enforcement mechanism (Tex. Penal Code § 42.03) that it has never tried. App., Exh. G, Arlington's Obj. and Resp. to Plaintiffs' Second Request for Production.

26. The City's Sidewalk Ordinance therefore fails strict scrutiny and must be found unconstitutional.

## V. Conclusion - Sidewalk Ordinance is unconstitutional.

27. In this memorandum, Plaintiffs have shown that the Court should differentiate this case from *Houston Chronicle* based on the issue of literature distribution and commercial newspaper sales. Plaintiffs have also shown other significant issues not discussed in *Houston Chronicle*, such as the unused state laws which are designed to manage pedestrian-motorist safety issues, which Arlington claims to be its goal, and free speech buffer zones, created either inadvertently, or with indifference to the free speech rights of Arlington citizens.

28. Lastly, Plaintiffs have shown that the Sidewalk Ordinance is not facially neutral, because Arlington will follow state law and provide a completely different set of rules for state employees, which makes the Sidewalk Ordinance unconstitutional.

Respectfully submitted this March 30, 2015,

Norred Law, PLLC
By: /s/ Warren V. Norred

| | |
|---|---|
| Warren Norred, Texas Bar 24045094 | Davis Miles McGuire Gardner, PLLC |
| wnorred@norredlaw.com | Joshua Carden, Texas Bar 24050379 |
| C. Chad Lampe, Texas Bar 24045042 | jcarden@davismiles.com |
| chad@norredlaw.com | 545 E John Carpenter Frwy, Suite 300 |
| 200 E. Abram St., Ste. 300; | Irving TX, 75062 |
| Arlington, TX 76010 | Phone: (972) 674-3885 |
| O 817-704-3984; F 817-524-6686 | Fax: (972) 674-2935 |
| Attorneys for Plaintiffs | Attorney for Plaintiffs |

CERTIFICATE OF SERVICE - On the afternoon of March 30, 2015, I served the foregoing to Robert Fugate, counsel for the City, through the ECF system.

/s/ Warren V. Norred