IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **KORY WATKINS and OPEN CARRY TARRANT COUNTY,** § § § § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 4:14-cv-381-O |
| § | |
| **CITY OF ARLINGTON,** § § | |
| Defendant. § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motion for Summary Judgment and Brief and Appendix in Support (ECF Nos. 47-48, 52), filed March 30, 2015; Plaintiffs' Response (ECF No. 62), filed April 21, 2015; and Defendant's Reply and Appendix in Support (ECF Nos. 65-66), filed May 4, 2015. Also before the Court are Plaintiffs' Motion for Summary Judgment and Memorandum and Appendix in Support (ECF Nos. 49-50, 53), filed March 30, 2015; and Defendant's Response and Brief and Appendix in Support (ECF Nos. 59-61), filed April 20, 2015.[1] The Court considered the motions, the briefing, the record, and the applicable law. Additionally, the Court held a hearing on these motions on June 23, 2015. The Court also ordered supplemental briefing on specific issues.[2]

---

[1] On May 13, 2015, Plaintiffs filed a Sur-Reply and Appendix in Support to Defendant's Motion for Summary Judgment. *See* ECF Nos. 67-68. "Except for the motions, responses, replies, briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence." LR 56.7. Plaintiffs did not request leave to file a sur-reply. Accordingly, the Court does not consider Plaintiffs' Sur-Reply or the Appendix in Support.

[2] Specifically, the Court ordered briefing limited to the least restrictive means analysis under strict scrutiny review and whether the parties were seeking an advisory opinion. *See* Order, June 24, 2015, ECF No. 75; Order, July 2, 2015, ECF No. 76. Having reviewed the briefing related to the rule against advisory opinions and for the reasons addressed in Defendant's brief, the Court agrees with the parties that they are

For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiffs' Motion for Summary Judgment is **DENIED**.

**I.    BACKGROUND**

Plaintiffs bring the instant action challenging Section 15.02 of the Streets and Sidewalks Chapter of the Code of the City of Arlington ("Section 15.02") under the First and Fourteenth Amendments to the United States Constitution. *See* 1st Am. Verified Compl., ECF No. 38. The Court determines that the following facts are undisputed.[3] In their Verified Complaint, filed on May 28, 2014, Plaintiffs successfully challenged a now-repealed version of Section 15.02. *See* Verified Compl., ECF No. 1. In October 2014, the City of Arlington ("Arlington") enacted the current version of Section 15.02, which regulates interactions between pedestrians and the occupants of vehicles stopped at traffic lights and has identical language to the ordinance at issue in *Houston Chronicle Publishing Company v. City of League City*, 488 F.3d 613, 622 (5th Cir. 2007). *See* Def.'s App. Supp. Mot. Summ. J. Ex. 1 (Supino 2d Decl.), App. at 5, ECF No. 48-1; Section 15.02, App. at 10, ECF No. 48-1. Section 15.02 states:

> No person who is within a public roadway may solicit or sell or distribute any material to the occupant of any motor vehicle stopped on a public roadway in obedience to a traffic control signal light. It is specifically provided, however, that a person, other than a person twelve years of age or younger; may solicit or sell or distribute material to the occupant of a motor vehicle on a public roadway so long as he or she remains on the surrounding sidewalks and unpaved shoulders, and not in or on the roadway itself, including the medians and islands.

---

not seeking an advisory opinion. *See* Def.'s Br. Resp., ECF No. 80.

[3] Plaintiffs filed their "Statement of Undisputed Facts" in support of their Motion for Summary Judgment. *See* ECF No. 57. Defendant disputed many of Plaintiffs' purported facts in its Response. *See* Def.'s Br. Opp. Mot. Summ. J. 18-28, ECF No. 61. The Court concludes that the facts in dispute are not material to the facial challenge to Section 15.02. Accordingly, the Court focuses on the material facts, which are undisputed.

Def.'s App. Supp. Mot. Summ. J. Ex. 1 (Section 15.02), App. at 10, ECF No. 48-1.

Plaintiff Kory Watkins ("Watkins") is a coordinator for Plaintiff Open Carry Tarrant County ("OCTC") (collectively, "Plaintiffs"), an organization that educates and advocates for gun rights in Texas. Pls.' App. Supp. Mot. Summ. J. Ex. A (Watkins Aff.) ¶¶ 2-3, App. at 1, ECF No. 58-2. One of OCTC's activities includes group walks in which participants provide pocket-sized copies of the U.S. Constitution and other literature to individuals requesting the materials, including those who are in motor vehicles stopped at a traffic light. *See, e.g.*, Def.'s App. Supp. Mot. Summ. J. Ex. 2 (OCTC Facebook Photos), App. at 19, ECF No. 48-2; Watkins Aff. ¶ 4, App. at 1-2, ECF No. 58-1.

On May 28, 2014, Plaintiffs filed their initial Combined Application for Preliminary Injunction and Temporary Relief, which the Court granted enjoining Arlington from enforcing the now-repealed version of Section 15.02. *See generally* Pls.' Combined Appl., ECF No. 5; Mem. Op. & Order, July 14, 2014, ECF No. 19. On October 29, 2014, Arlington notified the Court that it had amended the challenged ordinance and asked the Court to consider the possibility that Plaintiffs' action was now moot. Def.'s Notice Question Mootness, ECF No. 33. Plaintiffs responded to Arlington's Notice and separately requested leave to amend their Complaint to respond to the new ordinance, the current version of Section 15.02. Pls.' Resp., ECF No. 35; Pls.' Mot. Leave Amend, ECF No. 36. The Court granted Plaintiffs leave to amend their Complaint, and Plaintiffs filed their First Amended Verified Complaint. Order, Nov. 12, 2014, ECF No. 37; 1st Am. Verified Compl., ECF No. 38.

On January 8, 2015, the Court entered its Order concluding that Plaintiffs had standing to bring this action, granting Defendant's motion to dismiss Plaintiffs' as-applied claims under the

3

justiciability doctrine of ripeness, and dismissing Plaintiffs' as-applied claims without prejudice. *See* Order, Jan. 8, 2015, ECF No. 45. Additionally, the Court dissolved its Order enjoining Defendant from enforcing Section 15.02. *Id.* Plaintiffs did not seek leave from the Court to amend their as-applied claims. Currently, only Plaintiffs' facial claims remain pending.

The Court of Appeals for the Fifth Circuit held that language identical to the current version of Section 15.02 was content-neutral and facially constitutional in *Houston Chronicle.* 488 F.3d at 622. On its face, Section 15.02 does not have an express exception for government employees, whereas Texas state law requires that municipalities grant authorization for municipal employees, such as firefighters, "to stand in a roadway to solicit a charitable contribution," so long as such solicitors comport with other local requirements, such as posting a bond or obtaining a permit. Tex. Transp. Code Ann. § 552.007 (West 2013).[4] The Fifth Circuit did not reach the issue of speaker discrimination between government employees and non-government employees in *Houston Chronicle* because it had not been raised at the district court level. 488 F.3d at 623. Here, because Plaintiffs allege that Section 15.02 discriminates against non-government employees, they contend that Section 15.02 is an unconstitutional prior restraint on speech because it is not content-neutral, it is not narrowly tailored to serve a compelling government interest, and it does not leave open ample alternative channels of communication. 1st Am. Verified Compl. ¶ 53, ECF No. 38.

---

[4] Section 552.0071(a) of the Texas Transportation Code provides: "A local authority shall grant authorization for a person to stand in a roadway to solicit a charitable contribution as provided by Section 552.007(a) if the persons to be engaged in the solicitation are *employees or agents of the local authority* and the other requirements of this section are met." (Emphasis added).

On March 30, 2015, the parties brought cross motions for summary judgment. *See* Def.'s Mot. Summ. J., ECF No. 47; Pls.' Mot. Summ. J., ECF No. 49. The Court held a hearing on these motions on June 23, 2015. The motions have been fully briefed and are ripe for adjudication.

## II. LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

Cross motions for summary judgment must be considered separately, "as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39

(5th Cir. 2004). If there is no genuine issue of material fact and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment. *Id.* at 539.

## III. ANALYSIS

Plaintiffs move for summary judgment on the grounds that Section 15.02 is an unconstitutional prior restraint on speech and seek a permanent injunction to prohibit Arlington from enforcing Section 15.02. Pls.' Mot. Summ. J. 1, ECF No. 49. Arlington moves for summary judgment on the basis that Section 15.02 is facially constitutional because Section 15.02 is a content-neutral time, place, and manner restriction that is narrowly tailored to Arlington's compelling governmental interest in public safety. Def.'s Br. Supp. Mot. Summ. J. 2, ECF No. 52.

### A. First Amendment to the United States Constitution

"With the exception of First Amendment cases, a facial challenge will succeed only if the plaintiff establishes that the act is invalid under *all* of its applications." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013) (emphasis added) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). "The standard for facial challenges in the First Amendment cases is different, although still daunting." *Id.* "A law implicating the right to expression may be invalidated on a facial challenge if a *substantial number* of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (emphasis added and internal quotation marks omitted) (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)). Further, "[w]hen the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000).

The First Amendment to the United States Constitution states, in relevant part, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Although it explicitly

6

refers to federal action, the First Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir. 1999) (citing *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937)). To determine whether a law violates the First Amendment, the Court must: (1) assess whether the nature of Plaintiffs' activities deserve First Amendment protection; (2) identify the type of the forum involved; and then (3) determine whether Arlington's justification for the restriction satisfies the appropriate standard. *See Netherland v. City of Zachary*, 626 F. Supp. 2d 603, 606 (M.D. La. 2009) (citing *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 797 (1985)); *Hous. Chronicle*, 488 F.3d at 621-22 (discussing applicable law to determine constitutionality of ordinance regulating speech).

1. Nature of the Activities at Issue

First, the parties do not dispute and the Court concludes that Plaintiffs engage in protected activities when they distribute their literature on Arlington's streets and sidewalks. The Supreme Court has held that "handing out leaflets in the advocacy of a politically controversial viewpoint . . . is the essence of First Amendment expression" and "[n]o form of speech is entitled to greater constitutional protection." *See McCullen v. Coakley*, 134 S. Ct. 2518, 2536 (2014) (internal quotation marks and citation omitted); *see also United States v. Grace*, 461 U.S. 171, 176 (1983) ("There is no doubt that as a general matter peaceful picketing and leafletting are expressive activities involving 'speech' protected by the First Amendment.") (citations omitted); *Jamison v. Texas*, 318 U.S. 413, 416 (1943) ("[O]ne who is rightfully on a street which the state has left open to the public carries with him there . . . the constitutional right to express his views in an orderly fashion. This right extends to the communication of ideas by handbills and literature as well as by the spoken word.").

7

### 2. Type of Forum Involved

Next, Plaintiffs' chosen forums—in this case, public streets and sidewalks—occupy a special position in terms of First Amendment protection as traditional public forums. *Snyder v. Phelps*, 131 S. Ct. 1207, 1218 (2011); *Grace*, 461 U.S. at 181. In public forums, "the rights of the state to limit expressive activity are sharply circumscribed." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). "At one end of the spectrum are streets and parks which have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. In these quintessential public forums, the government may not prohibit all communicative activity." *Id.*

### 3. Whether Arlington's Justification Satisfies the Appropriate Standard

Finally, the appropriate standard applied to a restriction of speech in traditional public forums depends upon whether the regulation is content-based or content-neutral. *See Frisby v. Schultz*, 487 U.S. 474, 481 (1988); *Perry*, 460 U.S. at 45. To prohibit activity protected by the First Amendment in a quintessential public forum, "a content-based regulation must be 'necessary to serve a compelling state interest and . . . narrowly drawn to achieve that end. . . .'" *Hous. Chronicle*, 488 F.3d at 622 (quoting *Perry*, 460 U.S. at 45). On the other hand, a content-neutral regulation "must also be 'narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Id.* (quoting *Perry*, 460 U.S. at 45). Accordingly, the Court next focuses its analysis on whether the regulation at issue is content-based or content-neutral.

Plaintiffs contend that Section 15.02 is not facially content-neutral because Arlington's compliance with Texas state law affords firefighters and other municipal employees "a favored procedure not available to all." Pls.' Mem. Supp. Mot. Summ. J. 3, ECF No. 50. Allowing speech

8

in public roadways by municipal employees, while excluding speech by all others, would very likely be a speaker-based, and therefore a content-based restriction. *See Citizens United v. FEC*, 558 U.S. 310, 340 (2010); *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2223 (2015).

Arlington responds that, unlike the Texas statute, Section 15.02 makes no distinctions based on the content of speech prohibited. Def.'s Br. Supp. Mot. Summ. J. 9, 12, ECF No. 52. Arlington further contends that because Section 15.02 provides no exception for any person or group, Section 15.02 applies universally and is content-neutral. *Id.* at 12. Arlington relies on the Fifth Circuit's decision in *Houston Chronicle*, which held that Section 15.02's language, standing on its own, is content-neutral and facially constitutional. *Id.* at 13; *see also Hous. Chronicle*, 488 F.3d at 622. *Houston Chronicle* did not reach the question of whether the distinction between governmental and non-governmental employees in Texas Transportation Code § 552.007 could be imported into a city's ordinance when considering a facial challenge.

### a. Scope of the Ordinance

In order to determine whether the ordinance is content-based or content-neutral, the Court here must first determine the scope of the ordinance. *See United States v. Williams*, 553 U.S. 285, 293 (2008) ("The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers."). In particular, the Court must determine whether the requirements of Texas Transportation Code § 552.007 may be "imported into" the facial construction of Arlington's ordinance, Section 15.02, as a limiting construction.

It is permissible for a court considering a facial challenge to read a city's limiting construction into an ordinance. *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992).

9

In fact, courts must consider limiting constructions proffered by government actors. *Vil. Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.5 (1982). Generally, it is the government that seeks to have its limiting construction read into an ordinance in order to escape an overbreadth facial challenge. *See Voting for Am.*, 732 F.3d at 396-97 ("Federal courts are required to accept a narrowing construction of a state law *in order to preserve its constitutionality*. . . . [W]here fairly possible, courts should construe a statute to avoid a danger of unconstitutionality.") (emphasis added). For instance, a city may argue that a certain term is defined to have a particular narrow meaning, and therefore the regulation is not capable of being enforced too broadly. *See, e.g.*, *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 747 (5th Cir. 2009). Here, it is not the government that is seeking to have a limiting construction considered in order to preserve constitutionality; instead, it is Plaintiffs who seek to declare an ordinance unconstitutional based upon the city's stated intentions regarding its application. It is not clear whether a municipality's limiting construction may be used in a facial challenge seeking to declare an ordinance unconstitutional in the way Plaintiffs advocate in light of the doctrine's primary purpose of construing statutes to avoid the danger of unconstitutionality. *See Voting for Am.*, 732 F.3d at 396-97.

Nevertheless, a court "may impose a limiting construction on a statute only if it is 'readily susceptible' to such a construction." *Stevens*, 559 U.S. at 481. Courts may not rewrite a law to conform it to constitutional requirements. *Id.* Instead, to be readily susceptible, there must be some basis in statutory construction. *See Voting for Am.*, 732 F.3d at 397 (disagreeing with the dissenting opinion about the import of the statute's language and proper interpretation); *City of Hous. v. Hill*, 482 U.S. 451, 468 (1987) (finding an ordinance not susceptible to limiting construction because its language was plain and its meaning unambiguous); *Comite de Jornaleros de Redondo Beach v. City*

*of Redondo Beach*, 657 F.3d 936, 946 (9th Cir. 2011) ("Although we must consider the City's limiting construction of the Ordinance, we are not required to insert missing terms into the statute or adopt an interpretation precluded by the plain language of the ordinance.").

Here, on its face the plain language of Section 15.02 makes no distinction between municipal and non-municipal employees. Plaintiffs do not argue that any term, phrase, or part of the text in Arlington's ordinance should be construed to incorporate the state law's distinction between government and non-government employees. Neither do Plaintiffs make any other statutory construction or legislative history argument.[5] Rather, Plaintiffs argue that the ordinance is content-based because it will be *applied* in accordance with state law because Arlington has stated that it intends to abide by state law. *See* Pls.' Mem. Supp. Mot. Summ. J. ¶¶ 10, 19-26, ECF No. 50; Def.'s Br. Supp. Mot. Summ. J. 12, ECF No. 52; Mot. Hr'g Tr. 44:3-5 ("[T]he City acknowledges that we are required to comply with [Section 552.007] and that that state law provision prohibits us from enforcing 15[.]02 onto the firefighter group."); *see also* Tex. Atty. Gen. Op. DM-367 (concluding that previous version of Section 552.007 permitting entry into roadway for some individuals was a content-based restriction).

Therefore, the Court concludes that Plaintiffs' argument is properly characterized as an argument about the application of the ordinance rather than a facial challenge to the ordinance itself,

---

[5] For instance, while Plaintiffs have argued the ordinance is content-based because state law requires Arlington to give preferential speech to municipal employees, they have not asserted Section 15.02 is invalid because it is preempted as inconsistent with state law. Therefore, the issue of Arlington's authority to pass Section 15.02 in light of Section 552.0071(a) of the Texas Transportation Code is not properly before the Court. *Cf.* Am. Compl. ¶¶ 69-76, *Nat'l Solid Wastes Mgmt. Assoc. v. City of Dallas*, No. 3:11-cv-03200-O (N.D. Tex. Jan. 10, 2012) (ECF No. 36) (O'Connor, J.) (properly alleging state preemption); Am. Compl. ¶¶ 77-86, *Ash Grove Tex., LP v. City of Dallas*, No. 3:08-cv-02114-O (N.D. Tex. Oct. 15, 2009) (ECF No. 52) (O'Connor, J.) (properly alleging state preemption).

and the content-based evaluation with its attendant tailoring requirements may be very different if and when an as-applied challenge arises. As stated in the Court's previous Order, however, testimony about future enforcement, absent further factual development, is not sufficient to support an as-applied challenge. *See* Order, Jan. 8, 2015, ECF No. 45; *Hous. Chronicle*, 488 F.3d at 623. On this basis, the Court previously dismissed the as-applied challenge as not ripe.[6] *Id.*

Accordingly, as regards the facial challenge remaining before the Court, the Court concludes that the plain language of Arlington's Section 15.02 ordinance is not readily susceptible to Plaintiffs' proposed limiting construction. The Court therefore must look at the constitutionality of the ordinance in isolation, without importing the speaker-based limitations from state law. In accordance with *Houston Chronicle* and because the prohibition in Section 15.02 does not make distinctions based upon the speaker,[7] subject matter, or viewpoint on its face, the Court concludes that Section 15.02 is content-neutral. *See Hous. Chronicle*, 488 F.3d at 622.

                b.         *Whether Section 15.02 Satisfies Intermediate Scrutiny*

Governments may impose "reasonable restrictions on the time, place, or manner of protected speech." *McCullen*, 134 S. Ct. at 2529. A time, place, or manner restriction on speech in a public forum will be upheld if it satisfies the three-part test outlined in *Ward v. Rock Against Racism*: it must (1) be "justified without reference to the content of the regulated speech"; (2) be "narrowly tailored to serve a significant governmental interest"; and (3) "leave open ample alternative channels

---

[6] The Court notes an as-applied challenge to the current ordinance cannot occur as Arlington has refrained from enforcing the ordinance pending a ruling in this case. *See* Order, June 29, 2015, ECF No. 76.

[7] The ordinance does make a distinction for speakers who are "twelve years of age or younger." However, Plaintiffs do not allege unconstitutionality based upon this distinction. Accordingly, the Court does not reach the issue of whether the age distinction would withstand the appropriate level of scrutiny.

for communication of information." 491 U.S. 781, 791 (1989). Because Section 15.02 is "justified without reference to the content of the regulated speech," in other words, content-neutral, the Court must determine whether Section 15.02 is narrowly tailored to serve a significant governmental interest. *Id.*

i. Arlington's Significant Governmental Interest

To satisfy intermediate scrutiny, Arlington must demonstrate a significant governmental interest. Arlington has emphasized its interest in pedestrian and traffic safety. *See generally* Def.'s App. Supp. Mot. Summ. J. Ex. 4 (Arlington Pedestrian Crashes by Year and Month Jan. 2009-July 2014), App. 112-76, ECF No. 48-9; *id.* (NHTSA Pedestrian Data), App. 219-29, ECF No. 48-15; *id.* (Pedestrian Traffic Fatalities by State Preliminary Data 2013), App. 230-38, ECF No. 48-15. Moreover, in addressing an identically worded ordinance, the Fifth Circuit has held that public safety is "a compelling interest at the heart of the government's function . . . ." *Hous. Chronicle*, 488 F.3d at 622 (citing *Int'l Soc'y for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494, 496-97 (5th Cir. 1989)); *see also Cox v. New Hampshire*, 312 U.S. 569, 574 (1941) (stating municipality may "impose regulations in order to assure the safety and convenience of the people in the use of public highways"). Plaintiffs do not challenge the legitimacy of Arlington's significant governmental interest in public safety. Pls.' Mem. Supp. Mot. Summ. J. 9-10, ECF No. 50. Accordingly, the Court finds that Arlington has a significant governmental interest in pedestrian and traffic safety.

ii. Whether Section 15.02 Is Narrowly Tailored

"For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not 'burden substantially more speech than is necessary to further the government's legitimate

interests.'" *McCullen*, 134 S. Ct. at 2535 (quoting *Ward*, 491 U.S. at 799). "Such a regulation, unlike a content-based restriction of speech, 'need not be the least restrictive or least intrusive means of' serving the government's interests." *Id.* (quoting *Ward*, 491 U.S. at 798). "But the government still 'may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.'" *Id.* (quoting *Ward*, 491 U.S. at 799). "Rather, the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 798 (internal quotation marks omitted). A law is not narrowly tailored if it fails to restrict a significant amount of speech that harms the government interest to about the same degree as does the restricted speech. *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1670 (2015) ("Underinclusivity creates a First Amendment concern when the State regulates one aspect of a problem while declining to regulate a different aspect of the problem that affects its stated interest *in a comparable way*.") (emphasis in original). "Although a law's underinclusivity raises a red flag, the First Amendment imposes no freestanding 'underinclusiveness limitation.'" *Id.* at 1669.

Here, binding precedent indicates that the language of Section 15.02 is, on its face, narrowly tailored to promote Arlington's interest in public safety. *See Hous. Chronicle*, 488 F.3d at 622 ("On its face, prohibiting street solicitations *only* at such intersections is a reasonable means to narrowly tailor [the ordinance's] reach.") (emphasis in original). Arlington bears the burden of producing evidence in support of its proffered justification for the restriction, including objective evidence showing that the restriction serves its interest in public safety. *See Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 183 (1999). Arlington has presented evidence indicating a substantial number of deaths and injuries to pedestrians at intersections in Arlington between 2009

14

and 2014. *See* Arlington Pedestrian Crashes by Year and Month Jan. 2009-July 2014, App. 112-76, ECF No. 48-9.

Additionally, Section 15.02 does not raise fatal underinclusivity concerns. Section 15.02 aims squarely at the conduct most likely to undermine Arlington's interest in public safety: people distributing literature in the middle of heavily trafficked intersections. By limiting Section 15.02's reach to only traffic-light controlled intersections, Section 15.02 addresses Arlington's "focus on [its] most pressing concerns." *See Williams-Yulee*, 135 S. Ct. at 1668; *accord Hous. Chronicle*, 488 F.3d at 622. Thus, as determined by the Fifth Circuit's holding in *Houston Chronicle*, the language of Section 15.02 is justified and narrowly tailored to Arlington's significant interest in public safety. 488 F.3d at 622. Plaintiffs have not distinguished this ordinance from that of *Houston Chronicle* and, therefore, they have not rebutted Arlington's showing that Section 15.02 on its face is narrowly tailored to the governmental interest in public safety.

Given the evidence of ongoing driver-pedestrian accidents, the Court concludes that the ordinance that on its face prohibits individuals from distributing literature in roadways only at traffic-light controlled intersections is a narrowly tailored means to advance Arlington's significant interest in public safety. *See Hous. Chronicle*, 488 F.3d at 622.

           iii.    <u>Whether There Are Ample Alternative Channels for Communication</u>

A reasonable regulation of First Amendment activity within a public forum "must leave open ample alternative channels of communication." *Perry*, 460 U.S. at 45. For instance, in *Krishna Consciousness of New Orleans*, the Fifth Circuit addressed an ordinance that operated as a complete restriction on the use of streets for the solicitation of funds. 876 F.2d at 498-500. The Fifth Circuit

held that this restriction left open ample alternative channels of communication because the ordinance did "not prohibit soliciting funds from pedestrians, door-to-door canvassing, or telephone solicitations." *Id.* at 498.

Here, Section 15.02 leaves open ample alternative channels of communication. Section 15.02 does not prohibit individuals from exercising other forms of speech at intersections controlled by traffic signals. Individuals may demonstrate on the sidewalk and other areas adjacent to the roadways. Further, individuals may enter the roadways at intersections that are not controlled by traffic signals. Section 15.02 also allows distribution of literature so long as the speaker does not enter the roadway at the identified intersections. Ultimately, Section 15.02 does not completely ban the distribution of literature, but rather limits the places and manner by which literature may be distributed. Thus, individuals have ample alternative channels of communication.

### B. Damages

Plaintiffs seek actual and/or nominal damages in this action. 1st Am. Verified Compl. 13, ECF No. 38. "A plaintiff seeking both injunctive relief and money damages can continue to pursue the case, even after the request for an equitable remedy is rendered moot." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 286 (5th Cir. 2012) (internal quotation marks omitted) (quoting Erwin Chemerinsky, Federal Jurisdiction § 2.5.2 (6th ed. 2012)).

Plaintiffs' claim for money damages did not become moot when Arlington amended Section 15.02. *See Henschen v. City of Hous.*, 959 F.2d 584, 587-88 (5th Cir. 1992). Nor did Plaintiffs' claim for damages under the now-repealed version of Section 15.02 become moot when the Court dismissed Plaintiffs' "as-applied" challenge to the current version of Section 15.02. Indeed, Plaintiffs seek retrospective as well as prospective relief. *See* 1st Am. Verified Compl. 13, ECF No. 38.

Although Plaintiffs are not entitled to prospective relief, the Court finds that Plaintiffs are entitled to past actual damages based upon the previously repealed provision. *See Henschen*, 959 F.2d at 588; Mem. Op. & Order, July 14, 2014, ECF No. 19. Accordingly, the Court awards Plaintiffs past damages prior to the injunction.

### C. Attorneys' Fees

Plaintiffs seek attorneys' fees pursuant to 42 U.S.C. § 1988. 1st Am. Verified Compl. 13, ECF No. 38. Section 1988 states, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). In essence, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111-12.

Although the Court grants Arlington's Motion for Summary Judgment, for the purposes of attorneys' fees, Plaintiffs are the prevailing party under § 1988. In limited factual circumstances, to qualify as a prevailing party under 42 U.S.C. § 1988(b), the plaintiff:

> (1) must win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits.

*Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008).

Here, Plaintiffs successfully sought to have the enforcement of the now-repealed version of Section 15.02 enjoined. *See* Mem. Op. & Order, July 14, 2014, ECF No. 19. The Court unequivocally found that Plaintiffs demonstrated a substantial likelihood of success on the merits

17

when it granted Plaintiffs' motion for a preliminary injunction. *See id.* at 7-23. Several months later, Arlington amended Section 15.02 and filed its Notice of Question of Mootness. *See* Notice Question Mootness, ECF No. 33. The Court granted Plaintiffs leave to file an amended complaint in response to the current version of Section 15.02, and Plaintiffs filed their First Amended Verified Complaint. *See* Order, Nov. 12, 2014, ECF No. 37; 1st Am. Verified Compl., ECF No. 38. As discussed above, Arlington's current version of Section 15.02 is constitutional on its face and an as-applied challenge is unavailable because Arlington has refrained from enforcing it pending this ruling. Thus, Plaintiffs are prevented from obtaining final relief on the merits.

The Court finds that the situation here is analogous to that in *Dearmore*. *See* 519 F.3d at 524-26, 526 n.4 (noting that three-part test applicable only in limited factual circumstances); *cf. Davis v. Abbott*, 781 F.3d 207, 216-18 (5th Cir. 2015). Accordingly, Plaintiffs are the prevailing party for the purposes of 42 U.S.C. § 1988(b) and are thus entitled to attorneys' fees.

## IV.    CONCLUSION

Based on the foregoing, Section 15.02 is constitutional on its face. It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 47) is **GRANTED**, and Plaintiffs' Motion for Summary Judgment (ECF No. 49) is **DENIED**. It is **FURTHER ORDERED** that Plaintiffs must file a brief establishing the amount of past damages and attorneys fees on or before **September 2, 2015**, and Defendant must file a response brief, if any, on or before **September 16, 2015**. The Court will issue its Final Judgment separately.

SO **ORDERED** on this **12th** day of **August, 2015**.

*[signature: Reed O'Connor]*
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**